**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 800
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Stephanie J. Quincy (SBN 014009), QuincyS@gtlaw.com
Lindsay J. Fiore (SBN 026382), FioreL@gtlaw.com
Jorge Coss, (SBN 036220), CossJ@gtlaw.com

*Attorneys for Berkadia Real Estate Advisors, LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berkadia Real Estate Advisors LLC, <br><br>     Plaintiff, <br><br> vs. <br><br> Arthur R. Wadlund and Jane Doe Wadlund; Clint Wadlund and Jane Doe Wadlund, <br><br>     Defendants. | **VERIFIED COMPLAINT** |

For its claims against Defendants Arthur Wadlund ("**Art**" or "**A. Wadlund**") and Clint Wadlund ("**Clint**" or "**C. Wadlund**") (collectively, the "**Wadlunds**" or "**Defendants**"), Plaintiff Berkadia Real Estate Advisors, LLC ("**BREA**" or "**Plaintiff**") alleges as follows:

## INTRODUCTION

1.     This is an action by a real estate brokerage firm against two former sales associates in the firm's Tucson, Arizona office who conspired to accept positions with a competitor, leave the firm simultaneously, violate their restrictive covenants, divert business opportunities, and misappropriate most or all of the Tucson office's staff and business, customer goodwill and confidential information, decimating the office and

rendering it incapable of competing effectively with the Defendants and their new employer.

2.     By leaving together, and taking all of the office's employees with them, Defendants breached covenants in their respective agreements with the Plaintiff prohibiting them from soliciting employees and independent contractors of the firm. By taking and using the Plaintiff's confidential and trade secret information including information relating to customers, prospects, and past, present and future transactions and business opportunities, Defendants violated federal and state trade secret statutes as well as confidentiality obligations in their agreements with Plaintiff. By working for a competitor and soliciting Plaintiff's customers, Defendants breached and tortiously interfered with restrictive covenants prohibiting A. Wadlund from working for a competitor and from soliciting and doing business with Plaintiff's customers.

3.     As a direct and proximate result of Defendants' wrongdoing, Plaintiff is suffering (i) immediate and irreparable harm from the loss of employees and client and prospect relationships and goodwill and from the disclosure and misuse of its confidential information, and (ii) substantial compensable injuries in the form of lost business, revenues and profits from the decimation of the Tucson office.  To remedy these harms, Plaintiff seeks preliminary and permanent injunctions to restrain Defendants' ongoing misconduct, compensatory damages, the disgorgement of all commissions and other ill-gotten gains received by Defendants since their departure, punitive damages, reimbursement of Plaintiff's attorney's fees and litigation expenses, and related relief.

## **THE PARTIES**

4.     Plaintiff, BREA, is a real estate brokerage firm operating as a limited liability company organized and existing under Delaware law with its principal place of business located at 323 Norristown Road, Suite 300, Ambler, PA 19002.

5.     BREA was previously known as Hendricks-Berkadia, LLC, having formally changed its name to Berkadia Real Estate Advisors LLC on June 12, 2014.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

6.     Defendants worked for Plaintiff at Plaintiff's office in Tucson, Arizona.

7.     Defendants Art Wadlund and Jane Doe Wadlund are and were at all material times adult individuals residing in Tucson, Arizona.

8.     Defendants Clint Wadlund and Jane Doe Wadlund are and were at all material times adult individuals residing in Tucson, Arizona.

9.     The Wadlunds are not only business partners; they are father (Art Wadlund) and son (Clint Wadlund).

10.     As detailed below, Plaintiff and A. Wadlund executed a Transitional Compensation and Release Agreement dated December 17, 2012 (the "**TCRA**") in connection with Plaintiff's Long Term Incentive Plan (the "**Plan**") and the acquisition of a company for which A. Wadlund was a founding partner.[1] (*See* Ex. 1, Transitional Compensation and Release Agreement, dated December 17, 2012 and Long-Term Incentive Plan, dated June 14, 2013).

11.     As further detailed below, A. Wadlund and C. Wadlund each executed an Independent Contractor Agreement with Plaintiff (collectively, the "**ICAs**" and individually the "**A. Wadlund ICA**" and "**C. Wadlund ICA**").[2] (*See* Ex. 2, A. Wadlund Independent Contractor Agreement; Ex. 4, C. Wadlund Independent Contractor Agreement).

## JURISDICTION AND VENUE

12.     The acts and events on which Plaintiff's claims are based took place in Maricopa County, Arizona and Pima County, Arizona, including the execution and breaches of the relevant agreements and significant wrongful behavior by Defendants.

---

[1] Under Section 8.5 of the TCRA, A. Wadlund agreed that Plaintiff was entitled to obtain injunctive relief in Court to remedy violations of the TCRA's restrictive covenants.

[2] The TCRA, A. Wadlund ICA, and C. Wadlund ICA provide that the parties may seek injunctive relief in Court (TCRA § 8.5; A. Wadlund ICA § p.10; C. Wadlund ICA § p.10) while also containing arbitration clauses for disputes arising under such agreements (Plan, attached to and incorporated into TCRA, § 7.4; A. Wadlund ICA p. 10; C. Wadlund ICA § p.10). Plaintiff reserves the right to bring an arbitration action against Defendants, pursuant to the arbitration clauses in the TCRA and ICAs, seeking damages and other relief that may properly be awarded in arbitration.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1367 (supplemental jurisdiction) as well as U.S.C. § 1332 (diversity).

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated.

## GENERAL ALLEGATIONS

### Plaintiff's Business Purchase and the Related Plan Obligations

15.     Plaintiff is a real estate brokerage firm that specializes in the sale of apartment buildings and other multi-family dwellings.  The firm provides a wide variety of services to its clients, including brokering sales, research, and investment advisory services.

16.     Plaintiff is part of the Berkadia family of companies ("**Berkadia**"), which provides a full range of real estate solutions to its clients, including investment sales (through Plaintiff), mortgage banking, and mortgage servicing.

17.     Berkadia first established a broad national presence in the U.S. commercial real estate brokerage market in December 2012, when, through Plaintiff, it acquired substantially all of the business and assets of Hendricks & Partners, Inc. ("**H&P**"), a brokerage firm with approximately 96 sales advisors and 33 offices located throughout United States (the "**Acquisition**").

18.     Plaintiff paid $▮ million at the closing of the Acquisition.  In addition to the cash purchase price, the Asset Purchase Agreement ("**APA**") provided for a future earn-out of additional purchase price of up to an additional $▮ million after certain financial hurdles were met, to be paid to H&P and certain high revenue producing sales associates (like Art Wadlund) and other key executives (collectively, the "Earn-Out Participants"), in

annual installments over ten years based on a formula tied to the acquired company's financial performance.

19. The APA and related transaction documents also included multiple provisions designed to protect and sustain the value of the business and assets being acquired by Plaintiff, both initially and over the course of the ten-year earn-out period (later changed to eleven years), including restrictive covenants that prevented the sellers in the transaction – H&P, its shareholder Donald Henricks, the Earn-Out Participants, and its and their affiliates –from competing with Plaintiff.

20. The restrictive covenants were intended to protect the goodwill, customer relationships, proprietary information, and other items purchased in connection with the Acquisition, and the future earn-out payments to the Earn-Out Participants were incentive for them to keep their word and to maintain an alignment of financial interests between Plaintiff and the sellers.

21. As an integral part of the Acquisition transaction, Plaintiff and H&P agreed that a substantial portion of the purchase price paid by Plaintiff, including approximately one-third of the price being paid as an earn-out, would be paid to individual Earn-Out Participants (like Art Wadlund) who had vested ownership interests in H&P through a Phantom Stock Appreciation Award Agreement ("**PSAAA**").

22. Plaintiff and H&P agreed that each of the Earn-Out Participants would receive a significant portion of the Acquisition purchase price pursuant to a Transitional Compensation and Release Agreement in the form that was attached to the APA (the "Form TCRA"). The Form TCRA provided for each Earn-Out Participant who participated in the PSAAA to release his/her vested ownership interest in H&P, in exchange for (i) a cash bonus paid to the Earn-Out Participant at closing from the cash purchase price paid by Plaintiff, (ii) a phantom award payment paid to the Earn-Out Participant at closing, also from the cash purchase price paid by Plaintiff, and (iii) the opportunity, through the Plan,

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

to receive significant annual earn-out payments from Plaintiff over the course of the earn-out period.

23.     The Earn-Out Participants – as owners of H&P who received significant portions of the purchase price paid by Plaintiff both at closing and during the earn-out period – were sellers of the business and assets that Plaintiff purchased in the Acquisition.

24.     Through the Plan, Plaintiff's purchase has been ongoing.  By making substantial annual earn-out payments that continue to this day, Plaintiff has continued to purchase from the Earn-Out Participants the goodwill, customer relationships, and other assets that the Earn-Out Participants and their colleagues helped to develop and grow over the course of the earn-out period.

25.     The right for each Earn-Out Participant to participate in the Plan each year, and each annual earn-out payment that is subsequently paid out by Plaintiff under the Plan, is thus a *new* purchase by Plaintiff of the goodwill, customer relationships and other assets that developed and grew during the preceding earn-out period.

26.     In addition to providing the Earn-Out Participants with the opportunity to receive ongoing purchase price payments, as well as a financial incentive to remain associated with Plaintiff, the Form TRCA includes reasonable restrictive covenants to protect Plaintiff's legitimate interests in the confidential information and customer relationships and goodwill that it purchased initially and that it continued to grow and purchase over the earn-out period.

27.     These restrictive covenants also protect the interests of all Earn-Out Participants, collectively, because the payments to each Earn-Out Participant under the Plan are based (in large part) on the financial performance of *all* Earn-Out Participants.  By leaving BREA before the end of the earn-out period (particularly if, as with A. Wadlund, the departure is coupled with a breach of his/her material covenants), the departing Earn-Out Participant not only adversely affects his/her own interest in future earn-out payments,

but materially diminishes the ongoing value of the Plan to the remaining Earn-Out Participants.

**Art Wadlund**

28.    Defendant Art Wadlund was a founding member of H&P, and holds a license to sell real estate in Arizona.

29.    Prior to the Acquisition, A. Wadlund owned a substantial vested interest in H&P through the PSAAA.

30.    In the Acquisition, A. Wadlund, like other Earn-Out Participants with such interests, received a large portion of the purchase price paid by Plaintiff at closing, and was afforded the opportunity to receive significantly more of the purchase price during the earn-out period.

31.    At or about the time of the closing of the Acquisition, Art executed the TCRA, attached hereto as Ex. 1, by which he agreed to waive and release his vested ownership interest in H&P in exchange for (i) a closing bonus of $█████.00,[3] to be paid at closing from the cash purchase price paid by Plaintiff, (ii) a closing phantom award payment of $█████.00, also to be paid at closing from the cash purchase price paid by Plaintiff, and (iii) the opportunity to earn up to an additional $███,000 in earn-out payments over the following ten years in accordance with the Plan.

32.    As of the end of the Plan year that ended on December 31, 2020, A. Wadlund had received $█████.00 in earn-out payments under the Plan, and was set to receive additional earn-out payments for the years 2021, 2022, and 2023.

33.    These earn-out payments were based on BREA's nationwide business activities and were not limited to A. Wadlund's personal work or work in the Tucson market. In other words, A. Wadlund received, and was set to continue to receive, payments

---

[3] Plaintiff has redacted amounts paid to Defendants from the public filing.  Plaintiff will provide the Court with these amounts separately.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

for fees generated by BREA employees and contractors in all BREA offices around the U.S.

34.     A. Wadlund, like the other highly compensated and sophisticated Earn-Out Participants who signed Form TCRAs, was a seller of the business and assets purchased by Plaintiff in the Acquisition.

35.     To protect Plaintiff's legitimate interests in the customer goodwill, confidential information and other assets that it was purchasing in the Acquisition, and that it would continue to purchase over the course of the earn-out period as all such assets continued to develop and grow, the TCRA included a set of restrictive covenants:

a.     In Section 8.1(a) and 8.2, Art agreed that during his association with Plaintiff, and for a period of 18 months after the relationship ended, he would not engage, directly or indirectly, in any business that competes with Plaintiff.

b.     In Section 8.1(b) and 8.2, he agreed that during his association with Plaintiff, and for a period of 18 months thereafter, he would not call on, solicit or induce, or attempt to call on, solicit or induce, any person or entity who was a customer of Plaintiff within the preceding 12 months to cease doing business with Plaintiff.

c.     In Sections 7.2 and 7.3, he assigned to Plaintiff all confidential and proprietary information relating to the services he performed for Plaintiff, agreed to maintain such information in strict confidence, and agreed not to accept any position outside of Plaintiff that would involve the use or disclosure of such information.

d.     In Sections 8.1(c), 8.1(d) and 8.2, he agreed that during his association with Plaintiff, and for a period of 24 months thereafter, he would not solicit or hire any person who was an employee or independent contractor of Plaintiff within the 12 months preceding the end of the relationship.

36.     In addition to entering into the TCRA, A. Wadlund had an existing Independent Contractor Agreement with H&P that Plaintiff assumed upon the closing of the Acquisition.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

37.     On or about June 13, 2013, Art and Plaintiff entered into the A. Wadlund ICA, which replaced Art's Independent Contractor Agreement with H&P while expressly incorporating and preserving all of the terms of the TCRA. (Ex. 2, Section 10(F)).

38.     Like the TCRA, the A. Wadlund ICA included confidentiality obligations, in which A. Wadlund agreed, among other things, that "all information and data with respect to prospective and actual customers or clients of [BREA] . . . as well as all papers, files, memoranda, correspondence, and documents of any nature . . . relating to any closed, pending, or prospective transactions or matters pertaining to [BREA] . . . are the personal property of [BREA] . . . and must be returned . . . to [BREA] upon termination of this Agreement."  (Ex. 2, A. Wadlund ICA, § 7).

39.     Like the TCRA, the A. Wadlund ICA included a prohibition against soliciting other employees or independent contractors of Plaintiff both during his association with Plaintiff and for 12 months thereafter. (Ex. 2, A. Wadlund ICA, § 11).

40.     When he executed the A. Wadlund ICA, A. Wadlund also executed a Berkadia and All Affiliates Technology Policy Agreement ("**A. Wadlund Technology Agreement**," a copy of which is attached hereto as Ex. 3), pursuant to which he acknowledged that he would have access to various technology resources of Berkadia, that this information was Berkadia property and to be used solely for Berkadia purposes, and that upon the termination of his relationship with Berkadia, he "will surrender any and all items and/or copies of Berkadia Technology Resources."   (Ex. 3, Art Technology Agreement, §§ 1, 2, 6 and 11).

**Clint Wadlund**

41.     Upon Plaintiff's Acquisition, Art became the sole sales advisor in Plaintiff's Tucson, Arizona office (the "**Tucson Office**").  Approximately nine months later, on or about September 3, 2013, Plaintiff hired Defendant Clint Wadlund as a second sales associate, and from that point forward, until the two resigned together on January 10, 2022, they were the only sales advisors in the office.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

42.     C. Wadlund is licensed to sell real estate in Arizona.  At the time of his hiring by Plaintiff, he signed the C. Wadlund ICA, attached hereto as Ex. 4, which, like the A. Wadlund ICA, included broad confidentiality obligations (Section 7) and a prohibition against soliciting other employees or independent contractors of Plaintiff both during his association with Plaintiff and for 12 months thereafter (Section 11).

43.     C. Wadlund also signed a Technology Agreement that was identical to the one signed by A. Wadlund (the "**C. Wadlund Technology Agreement**," a copy of which is attached hereto as Ex. 5), with C. Wadlund likewise acknowledging the substantial amount of confidential data that Berkadia would provide, agreeing that this data belonged to Berkadia, and promising to return it upon the termination of his independent contractor relationship. (Ex. 5, C. Wadlund Technology Agreement, §§ 1, 2, 6 and 11 (the A. Wadlund Technology Agreement and C. Wadlund Technology Agreement, collectively, the "**Technology Agreements**")).

### Defendants' Tenure with Plaintiff

44.     During their tenure with Plaintiff, A. Wadlund and C. Wadlund were entrusted with a substantial amount of highly sensitive, trade secret information belonging to Plaintiff, including the company's database of customers and prospects, information concerning closed, pending and potential sales, marketing information, financial information concerning Plaintiff and Berkadia, and various other proprietary materials and information.

45.     This information was available to Defendants through access to Plaintiff's network and necessary for them to perform their duties.  The information remained Plaintiff's property, and Defendants were required to return all of it to Plaintiff and maintain no copies upon termination of the independent contractor relationship.

46.     Through their association with Plaintiff, Defendants were afforded the opportunity to meet, develop relationships with, and provide services to Plaintiff's customers and prospects, including customers and prospects already on the Plaintiff

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

customer/prospect database, as well as new customers or prospects that were added to the database during Defendants' tenure and as a result of Plaintiff's Acquisition.

47.     In the highly competitive industry of multi-family brokerage services, Plaintiff's confidential information and customer relationships are extremely valuable assets that Plaintiff takes significant precautions to safeguard. These measures include the confidentiality obligations and restrictive covenants in the TRCA, ICAs and Technology Agreements.

48.     Pursuant to the ICAs, Defendants were compensated by Plaintiff on a commission basis, receiving 60% of the total commissions earned by BREA on transactions in which either was involved.  Defendants worked as a team, sharing nearly all of the commissions that either of them received.

49.     Beyond paying Defendants substantial commissions, Plaintiff supported their work in various other significant ways, including providing them with Plaintiff's confidential customer and prospect database, affording them access to Plaintiff's and Berkadia's wide network of personnel and resources, and hiring full-time administrative employees to staff the Tucson Office.

50.     During the Defendants' time at BREA, the Tucson Office grew and flourished.  In the first year after the acquisition, 2013, Defendants completed deals totaling approximately $██ million, for which they collectively earned approximately $███ in commissions.  The next year, 2014, Defendants completed deals totaling approximately $██ million, for which they collectively earned approximately $███ in commissions. Six years later, in 2020, through their association with BREA, Defendants completed deals totaling approximately $██ million, for which they collectively earned $██ million in commissions ($██ million for A. Wadlund and $███ for C. Wadlund). And, in 2021, Defendants completed deals totaling $██ million, for which they collectively earned $██ million in fees ($██ million for A. Wadlund and $█ million for C. Wadlund).

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

51.     In addition to brokering transactions for buildings located in the areas of greater Tucson and Phoenix, Defendants were also directly involved in numerous transactions for properties located in New Mexico and Texas.

52.     Defendants also benefitted significantly from the national scope of Plaintiff's business.  Many of the clients serviced by Defendants were investors who did business outside of Arizona on a national or regional basis.  Defendants received numerous client and business referrals from sales associates of Plaintiff nationwide. Defendants in turn referred numerous clients to sales associates throughout the country, and were indirectly involved in transactions on a nationwide basis.

53.     The multi-family brokerage business is relationship driven.  The success that Art achieved, with Clint's support, derived from the close and enduring relationships that he developed with customers and potential customers both prior to BREA's Acquisition and since that time.

54.     Because the industry is so relationship driven, the vast majority of business done by Art and Clint is repeat business from longstanding customers, with whom they communicate on a regular basis concerning transactions, potential transactions, and opportunities.

55.     The various information conveyed in such communications, and the communications themselves, are highly sensitive, trade secret information that belong to BREA.

56.     As of the end of 2021, Plaintiff was anticipating continued success and growth in the Tucson Office in 2021 and beyond.  Just ten days later, Plaintiff's plans were completely upended.

57.     On Friday, January 10, 2022, with no notice or prior warning, Defendants, together, advised their supervisor that they were resigning effective immediately to take positions at Institutional Property Advisors ("**IPA**"), Plaintiff's direct competitor and a division of Marcus & Millichap.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

58.     As Plaintiff immediately understood, Defendants violated their respective obligations not to solicit one another (or any employees of Plaintiff) to leave the firm, and their work for IPA would be a direct violation of the noncompetition obligation in the TCRA.

59.     The following day, IPA issued a press release announcing the hiring of the Defendants as well as their support team at BREA, Lisa Ringo and Krista Ying who were up until that point employees of BREA.  (Ex. 6, Article "Institutional Property Advisors Hires Multifamily Investment Sales Team in Tucson, Arizona").

60.     In the press release, A. Wadlund made it clear that he and C. Wadlund intended to move to IPA the entire BREA client base that they serviced, purportedly to "provide additional opportunities for our clients to expand and grow their investment portfolios."  IPA's regional manager in the Phoenix office likewise touted the "strong overlap in client relationships" and the Defendants' contribution to "our collective client base."

**Defendants Conspired and Planned to Misappropriate Plaintiff's Confidential Information and Solicit Its Customers on Behalf of IPA.**

61.     By the express terms of their respective Agreements, Defendants were required to immediately return to Plaintiff all customer-related data and other proprietary information.  Defendants did not do so, however, and a review of their e-mail files indicate that they planned their exit and began stealing Plaintiff's confidential information as early as November 2021.

62.     In November and December 2021, Defendants refused to service certain of Plaintiff's long-standing customers and, instead, requested that those customers hold off on launching new properties until January 2022, when Defendants would begin their positions at IPA. (*See e.g.* Ex. 7, Dec. 20, 2021 E-mail Regarding 1Q 2022; Ex. 8, Dec. 16, 2021 Email Regarding 12_23 Call).

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

63.     On December 16, 2021, A. Wadlund sent various members of IPA confidential client information regarding Plaintiff's client properties pertinent to the real estate services Plaintiff has and would provide to those clients. (Ex. 9, Jan. 19, 2022 Email Re Downtown Tucson).

64.     Defendants continued to work with IPA on certain BREA client deals throughout December 2021 and January 2022. *Id.*

65.     Unbelievably, Defendants even had Plaintiff's employees draft their new bios for IPA utilizing Plaintiff's e-mail systems, while all were still providing services to and being paid by Plaintiff. (Ex. 10, Jan. 5, 2022 Email attaching Clint Wadlund Bio).

66.     In the early morning hours of January 10, 2022, before resigning later that day, Defendants forwarded from their BREA e-mail address to their IPA e-mail addresses more than 300 e-mails containing enormous amounts of proprietary documents and information, including cash statements and other documents related to a BREA client they intended to service at IPA, client tenant information and cash flows, and other proprietary information that would give Plaintiff's competitor an advantage in the market. (Ex. 11, Jan 10, 2022 Email attaching 12-month statement; Ex. 12, Jan. 10, 2022 Email Regarding Peaks at Redington; Ex. 13, Jan 10, 2022 Email Regarding Rent Roll).

67.     Defendants also directed existing BREA clients to work with them at IPA and informed them they would carry forward their projects at IPA. (*See* Ex. 14, Jan. 11, 2022 Email Regarding Ext Tucson; Ex. 15, Jan. 12, 2022 Regarding Sending comcap).

68.     Defendants continued to send Plaintiff's and client information to their IPA e-mail addresses after their resignation on January 10, including client purchase agreements, deal preferences, and loan terms. (*See* Ex. 9, Downtown Tucson; Ex. 16, Jan. 17 Email Regarding Missed call, what's up; Ex. 17, Jan. 18, 2022 Email Regarding Thorngrove indicative loan; Ex. 18, Jan. 17, 2022 Email Regarding Real Data).

69.     Defendants admitted, on Plaintiff's e-mail servers, that they specifically negotiated and insisted on positions for other of Plaintiff's employees at IPA, including Lisa Ringo. (*See e.g.* Ex. 19, Jan. 10, 2022 Email Regarding Leaving Berkadia).

70.     Since their resignation, Defendants have continued to work for IPA, compete against Plaintiff, solicit Plaintiff's customers, and use and disclose Plaintiff's confidential and proprietary information.

71.     On information and belief, Defendants would have now obtained listings for IPA and started working on sales that should rightly have been listed by Plaintiff.

72.     Although Plaintiff is acting assertively to minimize its losses, Defendants' ongoing misconduct has decimated the Tucson Office and rendered it unable to compete effectively with Defendants and IPA for the foreseeable future.

73.     Given the close and enduring customer relationships that the Defendants have misappropriated from Plaintiff to IPA, it would take two years or longer for Plaintiff to recreate and rebuild such relationships through other sales associates.

74.     By planning and conspiring to leave Plaintiff together, and by soliciting and bringing all of the employees in the Tucson office with them, A. Wadlund and C. Wadlund each violated their contractual obligations not to solicit Plaintiff's employees or independent contractors to end their employment with Plaintiff.

75.     By removing and using confidential information belonging to Plaintiff, A. Wadlund and C. Wadlund violated their contractual obligations to Plaintiff as well as federal and state trade secret laws.

76.     By working for IPA and soliciting Plaintiff's customers and prospects, A. Wadlund violated his restrictive covenants under the TCRA, both directly and through the actions of C. Wadlund, his agent and team member.

77.     By assisting and facilitating A. Wadlund's breach of his restrictive covenants, C. Wadlund tortiously interfered with Plaintiff's rights under the TCRA and violated his own obligations in the C. Wadlund ICA and Technology Agreement.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

78.     In short, through their numerous violations of their contractual, common law, and statutory obligations to Plaintiff, A. Wadlund and C. Wadlund effectively misappropriated all of the business, confidential information and customer goodwill of the Tucson Office, leaving it decimated and unable to compete effectively with Defendants and IPA.

79.     As a result, Plaintiff is suffering immediate and irreparable harm through the disclosure and misuse of its confidential information and the destruction of its client and prospect relationships.

80.     For these losses, Plaintiff has no adequate remedy at law and is entitled to injunctive relief.

81.     The misconduct of A. Wadlund and C. Wadlund is also causing Plaintiff substantial compensable injuries, in the form of lost business, revenues and profits in the Tucson Office, for which Plaintiff is entitled to an award of damages.

82.     On January 12, 2022, Plaintiff, through counsel, sent separate letters to A. Wadlund and C. Wadlund demanding that they cease their unlawful conduct, return all of Plaintiff's confidential information, and provide written confirmation of their compliance within one week. Plaintiff sent a letter to IPA on January 13, 2022 informing them of Defendants' obligations to Plaintiff.

83.     As of the date of this filing, neither Defendants nor IPA meaningfully responded to counsel's letters or discontinued their misconduct.  (*See* Ex. 20, Jan. 12, 2022 Letter to C. Wadlund; Ex. 21 Jan. 12 Letter to A. Wadlund).

### CLAIMS FOR RELIEF

#### COUNT ONE

**Breach of Contract - TCRA**
**(A. Wadlund)**

84.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

85.     A. Wadlund, as a seller, signed and agreed to be bound to the terms of the TCRA with Plaintiff with equal bargaining power in connection with the Acquisition.

86.     Plaintiff has at all times relevant to this lawsuit complied with its obligations under the TCRA.

87.     The TCRA contains confidentiality, non-solicitation of customers, non-solicitation of employees, and non-competition restrictive covenants, which are ancillary to a valid agreement and supported by adequate consideration.

88.     Plaintiff has a legitimate interest in protecting its confidential and trade secret information, which derives independent economic value, in addition to its goodwill, long-term customer relationships, and stable workforce.

89.     The covenants in the TCRA are reasonable in scope and in all other respects.

90.     In taking the actions described above, A. Wadlund breached the TCRA, including with respect to the non-solicitation, non-competition, and confidentiality covenants contained therein.

91.     In addition to actual violation of the outlined provisions, A. Wadlund will and has inevitably disclosed Plaintiff's confidential information, in violation of the TCRA.

92.     As a direct and proximate result of A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

## COUNT TWO

### Breach of Contract - ICA
### (A. Wadlund)

93.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

94.     A. Wadlund signed and agreed to be bound to the terms of the ICA with Plaintiff with equal bargaining power in connection with the Acquisition.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

95.     Plaintiff has at all times relevant to this lawsuit complied with its obligations under the ICA.

96.     The ICA contains confidentiality, non-solicitation of customers, and non-solicitation of employee restrictive covenants, which are ancillary to a valid agreement and supported by adequate consideration.

97.     Plaintiff has a legitimate interest in protecting its confidential and trade secret information, which derives independent economic value, in addition to its goodwill, long-term customer relationships, and stable workforce.

98.     The covenants in the ICA are reasonable in scope and in all other respects.

99.     In taking the actions described above, A. Wadlund breached the ICA, including with respect to the non-solicitation and confidentiality covenants contained therein.

100.    In addition to actual violation of the outlined provisions, A. Wadlund will and has inevitably disclosed Plaintiff's confidential information, in violation of the ICA.

101.    As a direct and proximate result of A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

### COUNT THREE

**Breach of Contract – Technology Agreement
(A. Wadlund and C. Wadlund)**

102.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

103.    A. Wadlund and C. Wadlund, separately, signed and agreed to be bound to the terms of the Technology Agreement with Plaintiff with equal bargaining power in connection with the Acquisition.

104.    Plaintiff has at all times relevant to this lawsuit complied with its obligations under the Technology Agreements.

105. The Technology Agreements contain confidentiality restrictive covenants, which are ancillary to a valid agreement and supported by adequate consideration.

106. Plaintiff has a legitimate interest in protecting its confidential and trade secret information, which derives independent economic value, in addition to its goodwill, long-term customer relationships, and stable workforce.

107. The covenants in the Technology Agreements are reasonable in scope and in all other respects.

108. In taking the actions described above, A. Wadlund and C. Wadlund breached the Technology Agreements, including with respect to the confidentiality covenants contained therein.

109. In addition to actual violation of the outlined provisions, A. Wadlund and C. Wadlund will and have inevitably disclosed Plaintiff's confidential information, in violation of the Technology Agreement.

110. As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

### COUNT FOUR

### Breach of Contract - ICA
### (C. Wadlund)

111. Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

112. C. Wadlund signed and agreed to be bound to the terms of the ICA with Plaintiff with equal bargaining power in connection with the Acquisition.

113. Plaintiff has at all times relevant to this lawsuit complied with its obligations under the ICA.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

114.   The ICA contains confidentiality, non-solicitation of customers, and non-solicitation of employee restrictive covenants, which are ancillary to a valid agreement and supported by adequate consideration.

115.   Plaintiff has a legitimate interest in protecting its confidential and trade secret information, which derives independent economic value, in addition to its goodwill, long-term customer relationships, and stable workforce.

116.   The covenants in the ICA are reasonable in scope and in all other respects.

117.   In taking the actions described above, C. Wadlund breached the ICA, including with respect to the non-solicitation and confidentiality covenants contained therein.

118.   C. Wadlund also breached the ICA when he encouraged A. Wadlund to leave Plaintiff, work for IPA, and breach his own obligations owed to Plaintiff.

119.   In addition to actual violation of the outlined provisions, C. Wadlund will and has inevitably disclosed Plaintiff's confidential information, in violation of the ICA.

120.   As a direct and proximate result of C. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

## COUNT FIVE

### Tortious Interference with Contract
### (A. Wadlund)

121.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

122.   A valid and enforceable contract exists between C. Wadlund and Plaintiff, including the ICA and Technology Agreement.

123.   Since the time Plaintiff hired C. Wadlund, A. Wadlund has known and understood that (i) C. Wadlund is bound by the C. Wadlund ICA and C. Wadlund Technology Agreement, (ii) these Agreements are substantively identical to the

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

corresponding agreements executed by A. Wadlund, (iii) the C. Wadlund ICA and C. Wadlund Technology Agreement prohibit C. Wadlund from disclosing or misusing Plaintiff's confidential and proprietary information, (iv) the C. Wadlund ICA prohibits C. Wadlund from soliciting employees or contractors to terminate their relationship with Plaintiff; and (v) that Plaintiff employed and had valid agreements with its employees and contractors in the Tucson office.

124.    A. Wadlund intentionally and without justification took actions which procured and continue to procure the breach of C. Wadlund's ICA and Technology Agreement, in addition to Plaintiff's relationships and agreements with its Tucson staff.

125.    As a direct and proximate result of A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

### COUNT SIX
### Tortious Interference with Contract
### (C. Wadlund)

126.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

127.    A valid and enforceable contract exists between A. Wadlund and Plaintiff, including the TCRA, ICA, and Technology Agreement. Valid and enforceable contracts also exist between Plaintiff and its administrative employees in the Tucson office.

128.    Since the time A. Wadlund was hired by Plaintiff, C. Wadlund has known and understood that (i) A. Wadlund is bound by the TCRA, A. Wadlund ICA, and A. Wadlund Technology Agreement, (ii) these agreements are substantively identical to the corresponding agreements executed by C. Wadlund, (iii) the TCRA, A. Wadlund ICA, and A. Wadlund Technology Agreement prohibit A. Wadlund from disclosing or misusing Plaintiff's confidential and proprietary information, (iv) the TCRA and A. Wadlund ICA prohibit A. Wadlund from soliciting employees or contractors to terminate their

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

relationship with Plaintiff and competing with Plaintiff; and (v) that Plaintiff employed and had valid agreements with its employees and contractors in the Tucson office.

129.   C. Wadlund intentionally and without justification took actions which procured and continue to procure the breach of the TCRA, A. Wadlund's ICA, and A. Wadlund Technology Agreement, in addition to Plaintiff's relationships and agreements with its Tucson staff.

130.   As a direct and proximate result of C. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

## COUNT SEVEN

### Tortious Interference with Contract
### (A. Wadlund and C. Wadlund)

131.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

132.   A valid and enforceable contract exists between Plaintiff and its existing clients, including those that were solicited to follow Defendants, and in fact did follow Defendants, to IPA.

133.   Since the time they began working for Plaintiff, Defendants were aware of Plaintiff's existing and long-term contractual relationships with its customers, including those acquired and bargained for in the Acquisition.

134.   Defendants intentionally and without justification took actions which enticed Plaintiff's aforementioned customers to end their agreements with Plaintiff.

135.   As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

/ / /

/ / /

/ / /

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

## COUNT EIGHT

### Tortious Interference with Prospective Business Relations
### (A. Wadlund and C. Wadlund)

136.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

137.    Plaintiff had a valid business expectancy from its current and prospective clients.

138.    Since the time they began working for Plaintiff, Defendants were aware of Plaintiff's existing and long-term contractual relationships with its customers, including the expectancy that those long-standing relationships would continue, and were aware of Plaintiff's relationships with its prospective customers.

139.    As described above, Defendants intentionally and without justification took actions which interfered with Plaintiff's prospective business relationships.

140.    Defendants acted improperly in interfering with Plaintiff's prospective business relations.

141.    As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

## COUNT NINE

### Violation of the Defend Trade Secrets Act
### (A. Wadlund and C. Wadlund)

142.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

143.    Plaintiff is the owner of valuable information used in, or intended for use in, interstate or foreign commerce, including, without limitation, detailed compilations of customer information, customer and prospect database, information concerning closed, pending, and potential sales, marketing information, and financial information concerning Plaintiff, Berkadia, and their clients ("**Trade Secrets**").

144.   Defendants misappropriated, retained and continue to use confidential information and Trade Secrets belonging to Plaintiff.

145.   This information is a trade secret within the meaning of the Federal Defend Trade Secrets Act ("**DTSA**") and pursuant to 18 U.S.C. § 1839(3) because:

a.   It is sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use;

b.   Plaintiff invests substantial resources to create, compile and maintain this information;

c.   The information is not known outside of Plaintiff, except only to the extent it is shared confidentially with Plaintiff's clients;

d.   Plaintiff takes significant precautions to safeguard the confidentiality of this information, including but not limited to requiring all of its employees and contractors to execute contracts that prohibit them from copying or disclosing such information; and

e.   The information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense.

146.   By retaining and using Plaintiff's Trade Secrets to compete with Plaintiff and by sending them to IPA, Plaintiff's direct competitor, A. Wadlund and C. Wadlund have and are misappropriating Plaintiff's Trade Secrets as defined in U.S.C. § 1839(5).

147.   Defendants' misappropriation of Plaintiff's Trade Secrets was willful and malicious.

148.   Plaintiff's Trade Secrets represent the results of substantial efforts and investment by Plaintiff.

149.   Defendants' misappropriation of Trade Secrets may be enjoined by this Court pursuant to 18 U.S.C. § 1836(b)(3).

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

150.    Plaintiff has suffered actual damages as a result of Defendants' misappropriation of its Trade Secrets, including but not limited to the loss of economic value of the Trade Secrets generated by years of efforts and investment on the part of Plaintiff.

151.    As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

<u>COUNT TEN</u>

**Violation of the Uniform Trade Secrets Act**
**(A. Wadlund and C. Wadlund)**

152.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

153.    Defendants retained and are continuing to use confidential information belonging to Plaintiff, including Trade Secrets.

154.    This information is a trade secret within the meaning of the Uniform Trade Secrets Act as adopted in both Pennsylvania and Arizona ("**UTSA**"), inasmuch as:

a.    It is sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use;

b.    Plaintiff invests substantial resources to create, compile and maintain this information;

c.    The information is not known outside of BREA, except only to the extent it is shared confidentially with Plaintiff's clients;

d.    Plaintiff takes significant precautions to safeguard the confidentiality of this information, including but not limited to requiring all of its employees and contractors to execute contracts that prohibit them from copying or disclosing such information; and

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

25

e.     The information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense.

155.     By retaining and using Plaintiff's Trade Secrets to compete with Plaintiff and by sending them to IPA, Plaintiff's direct competitor, A. Wadlund and C. Wadlund have and are misappropriating Plaintiff's Trade Secrets as defined in U.S.C. § 1839(5).

156.     Defendants' misappropriation of Plaintiff's Trade Secrets is willful and malicious.

157.     Plaintiff's Trade Secrets represent the results of substantial efforts and investment by Plaintiff.

158.     Defendants' misappropriation of Trade Secrets may be enjoined by this Court pursuant to 18 U.S.C. § 1836(b)(3).

159.     Plaintiff has suffered the loss of economic value of the Trade Secrets generated by years of efforts and investment on the part of Plaintiff.

160.     As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

## COUNT ELEVEN

### Civil Conspiracy
### (A. Wadlund and C. Wadlund)

161.     Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

162.     Defendants were aware of their contractual and legal obligations under the TCRA, ICAs, and Technology Agreements, in addition to their common law duties.

163.     Defendants knowingly, willingly, and maliciously agreed and conspired to commit the unlawful acts set forth above.

164.     Defendants committed the acts set forth in the above counts in furtherance of their conspiracy, which included without limitation the desire to gain an improper

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

competitive advantage for a direct competitor, injure Plaintiff's position in the Tucson market, and prevent the successful administration of its practice.

165.    Defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy, including without limitation the acts set forth above.

166.    As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

<u>**COUNT TWELVE**</u>

**Conversion**
**(A. Wadlund and C. Wadlund)**

167.    Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

168.    Plaintiff owns its confidential, proprietary, and private information.

169.    Defendants misappropriated and used Plaintiff's information to compete on behalf of a direct competitor, which act is inconsistent with Plaintiff's property rights.

170.    Defendants did not have Plaintiff's authority to use Plaintiff's confidential, proprietary, and private information, and certainly not on behalf of a direct competitor.

171.    Defendants' actions were intentional and malicious, and deprived Plaintiff of the fair use of its information, including by way of diminishing their value in the industry.

172.    As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

/ / /

/ / /

/ / /

/ / /

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

### COUNT THIRTEEN

### Unjust Enrichment (In the Alternative)
### (A. Wadlund and C. Wadlund)

173.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

174.   By their conduct described above, Defendants have been unjustly enriched by retaining a benefit to Plaintiff's detriment.

175.   It would be unfair and in violation of the fundamental principles of justice, equity, and good conscience to allow Defendants to retain the enrichment they have unjustly acquired.

176.   As a direct and proximate result of C. Wadlund's and A. Wadlund's conduct, Plaintiff sustained and will continue to sustain damages in an amount to be proven at trial, including immediate and irreparable harm.

### COUNT FOURTEEN

### Temporary Restraining Order and Permanent Injunction
### (A. Wadlund and C. Wadlund)

177.   Plaintiff incorporates by reference the allegations of the foregoing paragraphs.

178.   There is a reasonable likelihood that Plaintiff will succeed on the claims it has asserted herein.

179.   Plaintiff has asserted a clear right of interest that is in immediate need of protection.

180.   Plaintiff has no adequate remedy at law.

181.   Plaintiff will suffer continuing irreparable harm if injunctive relief is not granted.

### JURY TRIAL DEMAND

182.   Plaintiff hereby requests a trial by jury on all of its legal claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in its favor and against A. Wadlund and C. Wadlund, jointly and severally, for the following relief:

a.  Compensatory, consequential, and/or restitutionary damages in an amount to be proven at trial, including actual loss, lost profits, and unjust enrichment retained;

b.  Disgorgement of all commissions and other ill-gotten gains received;

c.  A temporary, preliminary, and permanent injunction order:

    i.   Prohibiting Defendants for a period of eighteen (18) months, to be extended from the resignation date to account for Defendants' period of breach, from working, directly or indirectly, for IPA or any other competitor of Plaintiff;

    ii.  Prohibiting Defendants from directly or indirectly soliciting, calling-on, or inducing any person or entity who is as of the date of his separation or was within twelve (12) months immediately prior to such date one of Plaintiff's clients or prospective clients, to be extended from the resignation date to account for Defendants' period of breach;

    iii. Prohibiting A. Wadlund for a period of twenty-four (24) months, to be extended from the resignation date to account for Defendants' period of breach, from soliciting, offering employment to, or hiring any person who was as of A. Wadlund's separation date or was within the twelve (12) months immediately prior to such date Plaintiff's employee, service provider, contractor, or affiliate;

    iv.  Prohibiting C. Wadlund for a period of twelve (12) months, to be extended from the resignation date to account for Defendants'

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

period of breach, from soliciting, offering employment to, or hiring any person who was as of C. Wadlund's separation date or was within the twelve (12) months immediately prior to such date Plaintiff's employee, service provider, contractor, or affiliate;

    v.   Prohibiting A. Wadlund and C. Wadlund from disclosing or using Plaintiff's Trade Secrets or any other confidential information belonging to Plaintiff;

    vi.   Requiring A. Wadlund and C. Wadlund to return to Plaintiff, and retain no copies of, Plaintiff's Trade secrets or any other confidential information belonging to Plaintiff;

d.  Reimbursement of Plaintiff's attorney's fees and litigation expenses, including all fees and costs;

e.  Punitive and/or exemplary damages;

f.  Prejudgment interest; and

g.  For such other relief the Court may deem just and proper.

DATED this 31st day of January, 2022.

GREENBERG TRAURIG, LLP

By   */s/ Stephanie J. Quincy*
      Stephanie J. Quincy
      Lindsay J. Fiore
      Jorge Coss

*Attorneys for Plaintiff*

**VERIFICATION**

STATE OF MARYLAND                           )
                                            )
COUNTY OF ANNE ARUNDEL COUNTY               )

My name is Keith Misner.  I am of legal age and competent to testify in Court.  I am the Co-Head of Investment Sales of Berkadia Real Estate Advisors, LLC ("**BREA**"), a Delaware limited liability company with its principal place of business in Pennsylvania.  I have read the Verified Complaint dated this 27th day of January 2022, on behalf of BREA. I hereby verify that the matters stated therein are either true or are not within my personal knowledge and have been assembled by authorized employees and counsel of BREA; and that I am informed and, upon information and belief verify that the facts stated therein are true.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 27th day of January, 2022 in Anne Arundel County, Maryland.

_____
KEITH MISNER

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000