**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berkadia Real Estate Advisors LLC, | No. CV-22-00049-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Arthur R Wadlund, et al., | |
| Defendants. | |
| Arthur R. Wadlund and Clint Wadlund, | |
| Counterclaimants, | |
| v. | |
| Berkadia Real Estate Advisors LLC, | |
| Counterdefendant. | |

Plaintiff has subpoenaed nonparty Don Hendricks for a deposition and to produce documents. Defendants have filed a motion to quash, arguing that the Hendrick's discovery is "irrelevant as a matter of law, unnecessary, voluminous and unduly burdensome, and needlessly increase[s] the cost of litigation." (Motion to Quash (Ds MQ) (Doc. 96) at 4-5.) The argument is simple. Defendants assert that the Court has determined as a matter of law that the Plaintiff's purchase of H&P over 12 years ago does not matter, i.e., this discovery is not relevant. Additionally, Defendants argue that the 30-document request tendered to Don Hendricks is voluminous and unduly burdensome. Defendants do not have standing to make the last assertion because they have no personal right or privilege with regard to

1  the documents sought. (Response to MQ (Doc. 99) at 4 (citing *Davenport v. SP Jedi Inc.*,
2  No. CV-18- 02580-PHX-SMM, 2019 WL 8226377, at *1 (D. Ariz. Apr. 19, 2019)
3  ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is
4  not a party to the action, unless the objecting party claims some personal right or privilege
5  with regard to the documents sought.").

6      The Court considers Defendants' assertion of lack of relevancy because Defendants
7  regularly argue the preclusive effect of the findings of fact and conclusions of law
8  contained in the Order denying the Temporary Restraining Order (TRO). In the context of
9  discovery, this would mean precluding discovery based on a merits determination, without
10 the benefit of a complete record and full briefing by dispositive motion. The Court's logic
11 explained here will be retained consistently across all aspects of discovery unless there is
12 a reason for a diversion. For reasons explained below the Court denies the Motion to Quash
13 Subpoenas to Don Hendricks.

14              Discussion: Motion to Quash Subpoena to Don Hendricks

15      The Defendants rely on findings of fact and conclusions of law issued in the Order
16 denying the Plaintiff a TRO. (Order (Doc. 31)). At that time, the Court considered a number
17 of contractual agreements between the parties that contained restrictive covenants that were
18 allegedly violated by the Defendants, the Wadlunds, when they left Plaintiff Berkadia's
19 employment and went to work for its competitor, Institutional Property Advisors (IPA).
20 The Court considered the Transitional Compensation and Release Agreement (TCRA)
21 which was entered into between Plaintiff, Defendant A. Wadlund, and H&P, which was
22 owned by Don Hendricks when Plaintiff purchased it.  The TCRA included restrictive
23 covenants upon which Plaintiff relied in part to support its breach of contract claims against
24 A. Wadlund.  Specifically, Plaintiff alleges that Defendants conspired to take Plaintiff's
25 clients and confidential information to its direct competitor, IPA, in breach of various
26 restrictive covenants, including those found in the TCRA entered into in connection with
27 the 2012[1] acquisition of H&P.

28 ___
[1] The temporal range for document requests is 2010 to present, (Ds MQ (Doc. 96) at 3, 5, 21-23), but the relevant contracts were entered in 2012 and 2013, (Complaint, Ex. 1, TCRA

1        The Court has reviewed the Order (Doc. 31) relied on by Defendants to support the
2    motion to quash. The findings of law and fact were issued on March 3, 2022, based on the
3    limited record existing at the time and the standard of review for a TRO, which is a
4    combination of probable success on the merits and a possibility for irreparable injury or
5    the existence of serious questions going to the merits and that the balance of hardship
6    sharply tips in favor of the movant. The Plaintiff moved for a TRO simultaneous with filing
7    the Complaint and tendered the TCRA and the Independent Contractor Agreements signed
8    by the Defendants. The Defendants responded with a declaration from Don Hendricks
9    attesting that he was the owner of H&P, that A. Wadlund worked for H&P as a
10   broker/independent contractor from approximately 1995 to 2012 and was not a party to the
11   purchase and sale acquisition agreement, which contained a 5-year non-complete
12   agreement that applied to H&P and Hendricks and ran for five years from the closing date.
13   (Order (Doc.31) at ¶¶ 7, 9, 17.)

14       Defendants' relevancy, or lack thereof, argument targets Count I, the breach of
15   contract claim based on the alleged violation by A. Wadlund of the TCRA. In 2012, when
16   Plaintiff acquired H&P from Donald Hendricks, chairman and sole owner of H&P, Plaintiff
17   also entered into the TCRA with A. Wadlund and H&P. (Order (Doc. 31) ¶¶ 6, 7, 12.) The
18   TCRA included restrictive covenants, paragraphs 8.1-8.6, *see* Order (Doc. 31) at 4-7),
19   which were considered by the Court when it denied the Plaintiff's request for a TRO.  The
20   Court at that time was assessing the likelihood of success on the merits of Plaintiff's claims,
21   including Count I. It did not grant Defendants' motions to dismiss and, instead, found those
22   motions moot when Plaintiff filed an Amended Complaint restating Count I. (Order (Doc.
23   68)).

24       The general rule is that decisions at the preliminary injunction phase do not
25   constitute law of the case, but conclusions on pure issues of law are binding. (Ds Reply
26   MQ (Doc. 103) at 5 (citing *Ranchers Cattlemen Action Leg. Fund United Stockgrowers of*
27   *Am. v. U.S. Dept. of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007)); *see also* (P Resp. MQ
28   (12/17/12); Long-term Incentive Plan (6/14/13); Ex. 2: A. Wadlund ICA (6/14/13); Ex. 4:
     C. Wadlund ICA (9/3/13).

(Doc. 99) at 5-7 (citing *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (TRO decisions and preliminary injunctions are not binding because they are by definition preliminary, made hastily, and on less than a full record), *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise."), *Ore. Barter Fair v. Jackson Cty., Oregon*, 372 F.3d 1128, 1136 (9th Cir. 2004) (these decisions are only based on the likelihood of success on the merits rather than the actual merits); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888-89 (9th Cir. 2001) (rulings of a trial court are subject to revision any time before entry of judgment; doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court). *See also* Fed. R. Civ. P. 54(b) (explaining that without entry of final judgment under 54(b), any order or other decision, however designated, that adjudicates fewer than all the claims or the right and liability of fewer than all the parties does not end the action to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties rights and liabilities[]").

There is no reason to stray from the general rule in this case. In reviewing the merits of the breach of contract claim involving the restrictive covenants contained in the TCRA, the court applied the following law:

> 10. "To be enforced, the restriction must do more than simply prohibit fair competition by the employee." *Valley Med. Specialists* [*v. Farber*], 982 P.2d [1277,] [] 1281 [(Ariz. 1999) (en banc) (citing *Bryceland v. Northey*, 772 P.2d 36, 39 (Ariz. Ct. App. 1989)). "In other words, a covenant not to compete is invalid unless it protects some legitimate interest beyond the employer's desire to protect itself from competition." *Valley Med. Specialists*, 982 P.2d at 1281 (citing *Amex Distrib. Co. v. Mascari,* 724 P.2d 596, 604 (Ariz. Ct. App. 1986)).

> 11. "The legitimate purpose of post-employment restraints is 'to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment.'" *Valley Med. Specialists*, 982 P.2d at 1281. (citations omitted).

> 12. "A legitimate ancillary restraint is one which is subordinate to (and essential to attainment of) the main lawful purpose of the transaction." *Three Phoenix Co. v. Pace Indus., Inc.*, 659 P.2d 1258, 1262 (Ariz. 1983) (en banc).

- 4 -

"The mere fact that the covenants accompanied the sale of a business does not automatically place them in the ancillary restraint category." *Id.* (citing *United States v. Addyston Pipe and Steel Co.*, 85 F. 271 (6th Cir. 1898)) (additional citations omitted)

14. "The test of validity of restrictive covenants is one of reasonableness." *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1220 (1986) (en banc) (quoting *Lessner v. Dental Laboratories, Inc. v. Kidney*, 492 P.2d 39, 40 (Ariz. Ct. App. 1971)).

15. "What is reasonable depends on the whole subject matter of the contract, the kind, character and location of the business, … the purpose to be accomplished by the restriction, and [the totality of] circumstances which show the intention of the parties." *Olliver/Pilcher Ins., Inc.*, 715 P.2d at 1220 (quoting *Gann v. Morris*, 596 P.2d 43, 44 (Ariz. Ct. App. 1979)).

16. "Courts generally look to the (1) subject matter of the contract, (2) the kind and character of the business, (3) the purpose of the restriction, and (4) the intent of the parties." *Or-Cal Inc. v. Tessenderlo Kerley Inc.*, No. CV-14-01980-PHX-DGC, 2015 WL 751212, at *2 (D. Ariz. Feb. 23, 2015) (citing *Gann*, 596 P.2d at 44).

19. "Though determining the reasonableness of a restrictive covenant is 'a fact-intensive inquiry that depends on weighing the totality of the circumstances,' it is ultimately a question of law." *ZEP, Inc. v. Brody Chem. Co., Inc.*, No. CV-09-0505-PHX-NVW, 2010 WL 1381896, at *5 (D. Ariz. Apr. 6, 2010) (quoting *[Valley Med. Specialists]*, 982 P.2d at 1280- 81).

(Order (Doc. 31) at 12-14.)

The Court considered each restrictive covenant in the TCRA and found for each covenant, "Plaintiff <u>on this record</u>, has failed to establish a <u>likelihood of success on the merits</u> because:" it failed to establish the scope is reasonable and not overbroad; failed to establish that if unreasonable, it may be saved by blue-penciling, and "assum[ed] without deciding that" the 18 and 24 month durations of the exclusion-period restrictions were unreasonable and thus unenforceable. (Order (Doc. 31) at 15-18.)

The Court reached this conclusion by evaluating the restrictive covenants under the standard applicable to employer/employee agreements, *see above* ¶11, rather than as covenants "ancillary to the sale of a business," (Order (Doc. 31) at 20-21, and "based on the facts as the Court understands them at this time, *id.* at 21. Those facts included the express terms of the TCRA restrictive covenants and the deposition by Don Hendricks attesting, among other things, that the parties executed the TCRA in connection with the Hendrick-Berkadia acquisition, i.e., the sale of a business; A. Wadlund was not a party to

the Hendricks-Berkadia acquisition; he, Donald Hendricks, was the sole owner and sold H&P, including its goodwill, to Plaintiff, and in connection with that deal, Mr. Hendricks agreed to a five-year non-competition provision.

When the Court ruled on the TRO, there was no evidence relevant to the intent of the parties or the purpose to be accomplished by the various restrictive covenants, specifically those included in the TCRA. The totality of circumstances, especially those relevant to show the intention of the parties related to the TCRA restrictive covenants remained to be developed during discovery. In short, Don Hendricks may have information relevant to and necessary for disposition of Count I, the claim alleging that Defendant A. Wadlund breached the restrictive covenants in the TCRA.

**Accordingly.**

**IT IS ORDERED** that the Motion to Quash Subpoenas to Don Hendricks (Doc. 96) is DENIED.

Dated this 3rd day of February, 2023.

Honorable Cindy K. Jorgenson
United States District Judge

- 6 -