**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berkadia Real Estate Advisors LLC, | No. CV-22-00049-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Arthur R Wadlund, et al., | |
| Defendants. | |
| Arthur R. Wadlund and Clint Wadlund, | |
| Counterclaimants, | |
| v. | |
| Berkadia Real Estate Advisors LLC, | |
| Counterdefendant. | |

There are multiple discovery motions pending, and the deadline for completing discovery has necessarily been continued because these discovery disputes brought discovery to a halt almost at its inception. Plaintiff filed a Motion to Compel Discovery asking for a directive from this Court for Defendants to fully respond to and produce documents and information requested in its First Set of Document Requests (RFPs), Interrogatories (ROGs), and Requests to Admit (RFAs), served on May 19, 2022. (P MC) (Doc. 95.)

Plaintiff also filed a Motion to Compel Production of Joint Defense Agreements from Defendants, (P MC: JDA) (Doc. 114), and a Motion to Compel Non-party Subpoena

Responses for Marcus & Millichap Real Estate Investment Services, Inc. (IPA), Ryan Sarbinoff, Hamid Panahi, Steve Gebing, Lisa Rino Hartley, and Drista Ying, (P MC: Nonparty IPA Subpoenas (Doc. 120)). The Motion to Compel Production of Joint Defense Agreements is addressed here. The dispute regarding the Subpoena to third-party IPA will be addressed in a separate Order.

Defendants have filed a Motion to Compel Production by Berkadia of Rule 30(b)(6) deponent for deposition and to provide dates for depositions of several people, if needed after the Rule 30(b)(6) deposition is conducted. (Ds MC (Doc. 110)). This motion is included here.

The Court denies, without prejudice, the Plaintiff's motions to compel responses to discovery and to compel production of the Joint Defense Agreement, and the Defendants' motion to compel the Rule 30(b)(6) deposition. The parties are ordered to meet and confer regarding the discovery, pursuant to the directives contained in this Order, to narrow the list of documents, if any, to those that are genuinely in dispute between the parties.

1. <u>Plaintiff's Motions to Compel Responses to RFPs, ROGs, and RFAs and for Production of Joint Defense Agreements.</u>

Plaintiff's first round of discovery was propounded to Defendants on May 19, 2022, which was several months prior to the issuance on August 24, 2022, of the Court's case management scheduling Order (Doc. 84), wherein the Court directed that "the limits on discovery are as set forth in Federal Rules 30, 31, and 33," except the Court allowed that RFPs and RFAs may be 50 per party, including subparts. (Order (Doc. 84) ¶ D.1 at 2.)

Plaintiff asserts Defendants have failed to produce relevant documents in response to RFPs; made only partial or non-responsive admissions or denials to FRAs; failed to respond to ROGs, and failed to provide a privilege log to support assertions of attorney-client or other privileged exceptions for nondisclosure. Plaintiff submits that any failure to identify any specific deficiency in the memorandum supporting the motion to compel "is not an indication of Berkadia's waiver of any such deficiency. Berkadia incorporates each deficiency outlined in Exhibit J as if fully set forth herein [(referring to the memorandum

supporting the motion to compel)]." (P MC (Doc. 95) at 5 n.1.) While the Court has reviewed each discovery request disputed in Exhibit J, it has done so in accordance with the issues raised in the memorandum for those requests. The Court reminds the Plaintiff that "Judges are not like pigs, hunting for truffles buried in briefs." *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (*per curiam*)). *See also* (Order (Doc. 80) at 6 (citing *Dunkle* and criticizing Plaintiff's assessment of the merits of its case). The Court has not perused Ex. J looking for discovery issues not expressly addressed in the motion.

According to the Plaintiff, the RFPs propounded, and the responses are identical for both Defendants. The RFAs and ROGs to the Defendants vary slightly, including numbering, but Plaintiff's motion to compel referred to paragraph numbering for A. Wadlund's discovery requests, and asserted the same challenges against both Defendants' answers or alleged failures to answer. The Court uses the same paragraph numbering used in the motion to compel and leaves it to the parties to apply the rulings of the Court, accordingly, to the respective discovery requests.

In response to the motion to compel, the Defendants charge that the discovery requests by the Plaintiff exceed the limits set by the Court. *See* (Objection (Doc. 98) at 2 (explaining RFAs for A. Wadlund are 53, plus 190 subparts and 44 for C. Wadlund plus 190 subparts; RFPs for both Defendants are 49, with 166 subparts)). Rule 33 limits ROGs to "no more than 25, including all discrete subparts. According to Defendants, the ROGs exceeded this limit because Plaintiffs tendered 23 to A. Wadlund, plus 35 subparts, and 20 to C. Wadlund, plus 35 subparts. The Plaintiffs reply that what Defendants call subparts are necessarily related to the primary question posed and subsumed within the primary question, i.e., in other words they are not discrete subparts. (Reply (Doc. 102) at 2.) Plaintiff argues that the Defendants waived this objection by answering some requests; Defendants should have objected to all of the requests or sought a protective order. *Id.* at 2-3 (citing

1   *Allahverdi v. Regents of Univ. of New Mexico*, 228 F.R.D. 696, 698 (N.M. 2005)

2   (describing this as procedure for when a party is asked too many interrogatories)).

3   In addition to complaining that the Plaintiff's discovery requests are excessive, the

4   Defendants assert, generally, that they responded to all relevant discovery requests and

5   produced approximately 7,361 pages of documents. The Court should, therefore, conclude

6   that Defendants have done enough, and further discovery would not be proportional to the

7   needs of the case related to resolving the claims in comparison to the burden and expense

8   of its production, especially because the Plaintiff has direct access to the majority of the

9   relevant discovery it seeks.

10   Defendants complain that the Plaintiff seeks discovery for approximately a ten-year

11   span of time, going back to 2012 when the alleged breach occurred in 2022, and Plaintiff

12   fails to make any showing of relevancy for this ten-year span of time. As the Court saw in

13   relation to Defendants' motion to quash the Don Hendrick's deposition, Defendants'

14   relevancy arguments rely on rulings made in the Order denying Plaintiff's request for a

15   Temporary Restraining Order (TRO).

16   This Court has found that the Order resolving the TRO is not dispositive of the

17   merits of the claims related to the noncompete provisions in the Transitional Compensation

18   and Release Agreement (TCRA) entered by and between Plaintiff, H&P, and Defendant

19   A. Wadlund in 2012. The Court has ruled the deposition of Don Hendrick's may proceed

20   because he may have information relevant to show the reasonableness of the noncompete

21   provisions in the TCRA. (Order (Doc. 130)). For this same reason, other discovery may be

22   relevant for the years 2012 and 2013.

23   A large number of the RFPs use the temporal parameter of "2012 to present." *See*

24   ¶¶ 1-7, 10, 13, 24-29, 32-33, 38, 40 (generally using temporal parameter of "2012 to

25   present."). This is contrary to the Plaintiff's assertion that its "discovery requests contain

26   a temporal limitation of January 1, 2021 to present, underscoring their narrowness and

27   proportionality to this dispute." (P MC (Doc. 95) at 5.) The Instructions for the RFPs

28   includes the provision: The temporal scope for these requests is January 1, 2021, to the

present unless otherwise noted." (P MC, Ex. A (Doc. 95-1) at 4 ¶8.) However, the majority of the RFPs note otherwise, and some RFPs include temporally confusing parameters like "while You were working for Berkadia," *id.* ¶¶ 14-15, or "regardless of the date created," *id.* ¶40. It is unclear whether these RFPs are secondarily limited by January 1, 2021 to present?

The Court has reviewed the pleadings and finds that discovery, including the RFPs, needs to contain the temporal limitation posited by the Plaintiff of January 1, 2021 to present, with the latter parameter becoming finite at some point during the pendency of the case. The Court suggests that the case is easily bookend by one year before and one year after the alleged breach on or about January 10, 2022, except for information from 2012 to 2013 going to show the reasonableness of the noncompete provisions included in the various contracts between the parties that were negotiated in 2012 and 2013. Without additional insight, the Court cannot see the relevancy of information outside these timeframes and agrees with Defendants' blanket assertion that the RFPs are not proportional to the claims and defenses of the parties.

<u>RFPs</u>

Temporally limited, the discovery requests are less burdensome and both parties seem to agree that Defendants need not produce documents that are repetitive of what Berkadia already produced from its own network. Of the approximately 7,361 documents produced, the Plaintiff complains that most are "duplicative of what has already been produced in this case" and create a document dump scenario, especially given the Defendants' utter failure to identify specific responsive documents. The Court agrees. There is absolutely no merit to Defendants' assertion that it may respond to a specific RFP with a general assertion that "any Documents and Communications that are not already in the possession of Berkadia and which *might* be responsive are contained within Bates Pages WADLUND-FED-000001-117324." This is the entirety of the Defendants' disclosed documentary record. The Court rejects the Defendants' position that they need not identify

1   within the document record they produce the specific documents that are responsive to the

2   specific RFP that they are answering. Anything less is simply nonresponsive.

3          The Court also rejects Defendants' assertion in every response of an objection of

4   privilege "including all claims of attorney-client communication privilege, work product

5   privilege, and joint defense privilege," *example* (P MC, Ex. J ¶ 6 (Doc. 95-1) at 230) and

6   their privilege log for three categories that identify documents withheld as "Too numerous

7   to list," prior to January 31, 2022. (Reply, Ex. 7: Privilege Log at 102-1) at 239).

8          Defendants, as the party asserting the privilege "must make a prima facie showing

9   that the privilege protects the information the party intends to withhold." *In re Grand Jury*

10  *Investigation*, 974 F.2d 1068, 1070-71 (9th Cir. 1992). Defendants "may do so by

11  producing a privilege log describing: "(a) the attorney and client involved, (b) the nature

12  of the document, (c) all persons or entities shown on the document to have received or sent

13  the document, (d) all person or entities known to have been furnished the document or

14  information of its substance, and (e) the date the document was generated, prepared, or

15  dated." *Id*. "When a party withholds information otherwise discoverable by claiming that

16  the information is privileged, the party must "expressly make the claim" and "describe the

17  nature of the documents, communications, or tangible things not produced or disclosed—

18  and do so in a manner that, without revealing information itself privileged or protected,

19  will enable other parties to assess the claim." *See also* Fed. R. Civ. P.26(b)(5). Defendants

20  have done neither.

21         Even without applying applicable discovery rules and simply applying common

22  sense, the Court does not understand how Defendants believe either their blanket objections

23  or tendered privilege log serves to advance any claim of privilege to excuse disclosure of

24  a document that is the subject matter of a RFP. Defendants' claims of privilege for

25  categories of documents "too numerous to list" fails to describe the nature of the

26  documents, communications, or tangible things not produced or disclosed in a manner that,

27  without revealing information itself privileged or protected, enables the Plaintiff or this

28  Court to assess the claim. Unless Defendants fully comply with Rule 26(b)(5) to excuse

1   disclosure of relevant information, including correcting the privilege log, Defendants shall

2   immediately disclose all allegedly privileged documents or prepare to be sanctioned for

3   any continued noncompliance.

4        Subsequent to briefing the motion to compel answers to the RFPs, on December 9,

5   2022, the Defendants produced a privilege log, including the same deficient assertions of

6   categorical privileged documents too numerous to list, plus added specifically listed

7   communications to or from Defendants' attorney to counsel for IPA claiming attorney-

8   client privilege based on an assertion of joint defense/ common interest/ joint prosecution

9   agreement. (P MC: JDA, Ex. 6: Privilege Log (Doc. 114-1) at 30-32.) The supplemental

10  privilege log remains deficient to claim this privilege, or any other privilege, because it

11  fails to identify the nature of the document and does not reflect all persons or entities known

12  to have been furnished the document or information of its substance.

13       As it now stands, the privilege log does not include the Joint Defense Agreements

14  that are the subject of Plaintiff's Second Set of RFPs and the Motion to Compel Production

15  of Joint Defense Agreements from Defendants. (P MC: JDA (Doc. 114.) Accordingly, the

16  Court concludes that Plaintiff is challenging the integrity of Defense counsel's assertion

17  that a Joint Defense Agreement exists covering nondisclosure of various discovery

18  responses. Counsel, as an officer of the Court, is required to make honest and truthful

19  representations to this Court. The Court does not require counsel to prove this attestation.

20  Otherwise, the above directive that Defendants produce any alleged privileged documents

21  unless they properly assert the privilege, pursuant to Fed. R. Civ. P. 26(b)(5), applies to the

22  production of the Joint Defense Agreements.

23       The Court would stop here and simply order the Defendants to provide responsive

24  answers to the RFPs as follows: 1) to provide citation to the document records that only

25  identify specifically the documents that are responsive to the RFP being answered and 2)

26  to comply with Fed. R. Civ. P.  26(b)(6)(a) by expressly making any claim of privilege by

27  using a privilege log that fully describes the nature of the documents, communications, or

28  tangible things not being produced or disclosed.

Plaintiff, however, asserts entitlements to disclosures beyond these two issues, and Defendants raise objections of relevancy and proportionality. Plaintiff carries the burden to show the discovery sought is relevant. Though this is a relatively low bar, Plaintiff files to cross it. (P MC (Doc. 95) at 10 (citation omitted). As noted above, the RFPs exceeded relevant temporal limits.

Equally excessive, Plaintiff has tendered discovery requests well beyond the numbers allowed by Court order, which included the very generous number of 50 RFPs, including subparts, per Defendant. Plaintiff tendered 49 RFPs to each Defendant. If even a few of these RFPs has any discrete subparts, the Plaintiff has exceeded the scope of discovery allowed by the Court. The limitation of 50 RFPs, including subparts, per party serves the purpose of ensuring that the parties prioritize their requests based on proportionality to its relevancy to prove the claims. Too many RFPs defeats this purpose and becomes burdensome.  Both conditions are seen in the RFPs propounded by Plaintiff in this case.

Having described the flaws related to the RFPs generally, the Court addresses relevancy and proportionality in connection with the specific challenges raised in the motion to compel. Plaintiff asserts incompleteness or no responsiveness related to 30 RFPs based on three specific arguments.

1.  RFPs ¶¶ 3-5, 8-11, 13-17, 22-23, and 30-34: Responses within Bates Pages WADLUND-FED 000001-007324 are incomplete.

2.  RFPs ¶¶ 12-13, 15, 17-21, 41, and 44: Agreements with IPA and related employment documents and evidence of soliciting and competing are relevant.

3.  RFPs ¶¶ 7 and 24: Documents evincing payments received by Defendants.

The Court has explained above why the blanket Bates Pages WADLUND-FED 000001-007324 responses in ¶¶ 3-5, 8-11, 13-17, 22-23, and 30-34 are incomplete. It is meaningless to qualify a disclosure with: "Documents and communications not already in possession of Plaintiff "and which *might* be responsive" are contained "within Bates Pages WADLUND-FED 000001-007324." The Defendants are either producing documents or not, and if they are making a document production in response to a specific RFP, that

document must be specifically identified by its individual and specific Bates Stamp.

Because both parties complain about Defendants' production of documents already in the record as disclosed by the Plaintiff, the Court orders the parties to meet and confer regarding how to address unnecessary and confusing duplicative disclosures. The Court finds it incongruous for Plaintiff to insist on disclosures by Defendants of documents within its own control, such as contracts, policies, commission payments made by Berkadia to Defendants, etc., and then complain about duplication. Plaintiff shall not seek discovery from Defendants of documents that are in the control of the Plaintiff that are unreasonably cumulative or duplicative or that can be obtained from some other source that is more convenient, less burdensome, or less expensive, such as seeking it in-house. Fed. R. Civ. P. 26(b)(2)(C)(i).

The Court addresses the RFPs which have been bundled into the last two categories in the motion to compel for alleged incompleteness. *See* ¶¶ 12-13, 15, 17-21, 41, and 44; ¶¶ 7 and 24. First, these RFPs are relevant to the extent they seek information, including documents, that show the relationships between Defendants and IPA and any receipt by Defendants of payments or other items of value from IPA in 2021 and 2022. This includes any agreement and/or receipt of payment or partial payment of a $3 million bonus from IPA. Second, Plaintiff's RFPs to A. Wadlund regarding payments received in 2012 and 2013 may go to show the extent of any interest, ownership or otherwise, he may have had in H&P and be relevant to show the reasonableness of the TRCA noncompete provisions, including the lengthy (18 and 24 month) exclusionary periods. The Court finds, however, that these RFPs reach well beyond such relevancy.

The Court will not rewrite each RFP for the Plaintiff, which in many instances would require duplicative repetitious editing. *Compare* (RFPs for "Documents and Communications": ¶ 7 (of any nature received, including "federal and state tax returns (Including all attachments), W-2 and 1099 forms, <u>payroll records</u>, <u>check stubs</u>, unemployment compensations, withdrawals from 401(k) and other retirement accounts, savings accounts, or CDs, disability income, <u>gifts, awards, and prizes</u> from 2012 to

present"), *with* ¶ 4 (relating to or arising from engagement with Berkadia, including "performance appraisals or reviews, training materials, memoranda, job descriptions, policies, manuals and/or handbooks, disciplinary actions, written complaints, *correspondence, diaries, notes, calendars*, benefit and salary information, research, plans, strategies, charts, hiring documentation, and separation documentation from 2012 to present"), *with* ¶ 24 (identifying assets, cash, sources of income, or other items of value, including primary homes, vacation homes, cars, and boats from 2012 to present), *with* ¶41 (regarding any payments made by IPA, including commissions, bonuses, and/or signing bonuses); *compare also* ¶ 5 ("Portfolio summaries, portfolio valuation, properties, property valuations, *notes, journals, logs, calendars*, blogs, social media postings, or other chronicles, including electronic documents, You maintained, . . . )) (emphasis added to reflect repetition of relevant information being requested in RFPs).

The Court should not have to remind the parties that discovery may be obtained "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the party's access to relevant information, the party's resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401.

The parameters for relevancy are straight forward in this case because the breach of contract claims against Defendants arise from contracts that originated in 2013. After that, the relevancy of any evidence becomes substantially diminished to show the reasonableness of noncompete provisions based on a totality of the circumstances in 2013, including the parties' intentions when they negotiated the contracts which support Plaintiff's breach of contract claims. Likewise, relevancy to the breach of contract claims is limited temporally to when the alleged breach arose, January 10, 2021, and to conduct

that occurred related to Defendants' ending their work for Plaintiff and beginning to work for IPA. Relevancy for the purpose of discovery is a low bar; "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Without a Court order, it should be obvious to the Plaintiff that it may not discover the Defendants' tax information, W-2 and 1099 forms, unemployment compensation, withdrawals from 401(k) and other retirement accounts, savings accounts, or CDs, disability income, performance appraisals or reviews, training materials, manuals and/or handbooks, disciplinary actions, written complaints, and separation documentation from 2012 to present. It should be equally apparent that discovery does not extend to assets, cash, primary homes, vacation homes, cars, and boats from 2012 to present.

Not only do these RFPs exceed relevant temporal limits, but there is also no explanation, and the Court cannot imagine one, as to why this information would go to show either the parties' intentions related to the contractual noncompete provisions or whether Defendants breached those contract provisions when they left Plaintiff's employment and began working for IPA.

If Defendants' relevancy arguments did not mirror their case advocacy arguments, it would have been equally obvious to them that Plaintiff seeks relevant information about their relationships with IPA, contractually and otherwise, such as production of correspondence, diaries, notes, calendars, payments from IPA, including payroll records, check stubs, benefit and salary information, research, plans, strategies, charts, and hiring documentation related to the work they have done for IPA. Such information goes to show Defendants' conduct, including whether they directed Berkadia clients to IPA which Plaintiff asserts breached the contractual noncompete provisions. Such information goes to show whether Defendants took and began using at IPA any allegedly proprietary Berkadia information or documents in violation of confidentiality agreements. If Defendants had made more than mere conclusory assertions of "vagueness and ambiguity" or fleshed out actual parameters for "relevancy and proportionality" arguments, they would have been

able to distinguish in meaningful objections between discoverable and non-discoverable information.

For example, Defendants' arguments of relevancy stop short of more meaningful objections, such as to the definition for Berkadia's clients of: "past, current, and prospective clients, including those that You serviced on behalf of or with Berkadia, notwithstanding any argument that may be asserted that they are Your clients and not Berkadia's." There is no explanation, and the Court cannot imagine one, for why Berkadia's clients at issue in this case, involving breach of contract claims for allegedly misappropriating clients and proprietary information as of January 10, 2022, should be defined as current and prospective clients, who were not clients as of that date.

The Court is not going to do the work for the parties. With the clarity provided by the Court in this Order for relevancy, including its temporal components, the parties shall meet and confer to resolve the disputed discovery, including excluding duplicative disclosures of documents that Plaintiff disclosed and excluding documents that can be obtained inhouse pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i). When so narrowed, the 29 RFPs that remain at issue in the motion to compel will not be overly burdensome for Defendants to answer.

<u>ROGs</u>

Rule 33 provides for a party to serve on another party no more than 25 written interrogatories, including all discrete subparts. Plaintiff complains that Defendants failed to provide responses central to the issues of this case: the terms of IPA relationships, ROGs ¶¶ 3, 5-8, 12 and 22; misappropriation and use of Berkadia's information, ROG ¶ 13, and A. Wadlund's former and current retirement plans, ROGs ¶¶ 14 and 15. In responding to these 10 challenges, Defendants point out that Plaintiff has served ROGs in numbers well in excess of the 25-limit. According to Defendants, Plaintiff has served 113 Interrogatories. The Court assumes that like the other discovery requests, the Interrogatories for the two Defendants mirror each other, generally, and therefore understands the Defendants to assert

113 Interrogatories per Defendant. Even if this number applied to both, 133 exceeds the 25 Interrogatory, including subparts, limit in Rule 33.

"Although the term 'discrete subparts' does not have a precise meaning, courts generally agree that the [common denominator] is: 'interrogatory subparts are to be counted as one interrogatory ... if they are *logically or factually subsumed within and necessarily related to the primary question*.'" *Trevino v. ACB American Inc*., 232 F.R.D. 612, 614 (N.D. Cal. 2006) (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)). The Court should not have to explain to Plaintiff's experienced attorneys how to discern the parameters of "discrete" for the purpose of determining whether subparts within a single interrogatory, are subsumed and related, but the Court recognizes that the devil can be in the details and explains how it applies the common denominator.

This Court relies on *Kendall v. GES Exposition Services, Inc*., 174 F.R.D. 684, 685 (D. Nev. 1997), which formulated a test to determine "whether subsequent questions, i.e., subparts, within a single interrogatory, are subsumed and related," as follows:

> The test examines "whether the first question is primary and subsequent questions are secondary to the primary question.' *Id*. In other words, the test asks "can the subsequent question stand alone? Is it independent of the first question?" *Id. If the first question could "be answered fully and completely without answering the second question," the second question was independent to the first, and, therefore, discrete under Rule 33. Id*. at 686.

*Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (emphasis added).

By this test, most of the Interrogatories propounded by Plaintiff include discrete subparts, and Plaintiff has tendered ROGs in excess of the 25-limit. As noted in the context of the RFPs, this excess results in proportionality issues because Plaintiff fails to prioritize its discovery requests based on relevancy to prove its case. The Court proceeds, here, similarly to the approach taken above for the RFPs. In the first instance, it afforded the Plaintiff an opportunity to propound 25 Interrogatories of its choice per Defendant. Plaintiff has already propounded, and Defendants have answered, approximately half the Interrogatories which are not at issue in the motion to compel. The Court addresses the 12 answers challenged by Plaintiff in the motion to compel.

In the interest of judicial economy, the Court rules here on the relevancy arguments and, generally, agrees with Plaintiff, as follows: the terms of IPA relationships are relevant to show the compensation Defendants received from IPA, and the work Defendants performed for IPA. Such evidence may go to show that Defendants received something of value in exchange for allegedly misappropriated information allegedly belonging to Berkadia. For this same reason, it is relevant to identify the information Defendants shared with IPA.

Interrogatory 14 asked A. Wadlund to identify his plans concerning retirement, including without limitation as described in the resignation letter sent to Berkadia on January 10, 2022." Plaintiff asserts A. Wadlund's past, present or future retirement plans are relevant to show "what precisely was exchanged for a $3 million bonus." A. Wadlund responded he has no "definitive" plans to retire. Plaintiff complains that Defendant attempts to qualify the answer by using the term "definitive." Furthermore, this answer contradicts statements that he made in 2021 and in his resignation letter that he was planning to retire, work only 20 to 30 percent of the time in 2022, and completely retire by the end of 2022. The Court finds no improper qualification of the answer because plans by their nature are subject to change, and any answer to this question should necessarily reflect his most definitive plan(s).

Interrogatory 15 asked A. Wadlund to identify efforts he made to find a replacement for A. Wadlund from 2012 to present, including giving details like how long he searched, etc. Plaintiff submits this information is relevant to show the reasonableness of its restrictive covenant's temporal scope to prove the breach of contract claim. A. Wadlund answered this Interrogatory by stating: "he never sought a replacement for himself. A. Wadlund told Berkadia that it needed to grow the Tucson office to remain competitive with IPA and others." Plaintiff objects to the answer because it contradicts his prior statement in his resignation letter that "Defendants 'tried very hard to hire someone to be a partner with Clint and have not been successful – the talent and experience level is just not available in Tucson.'" The interrogatory has been answered, and Plaintiff may inquire

1    further into the disparity between the two answers.

2           These Interrogatories were answered. Plaintiff is being afforded an opportunity to

3    propound 10 Interrogatories per Defendant, which may be used for further investigation

4    related to these interrogatories, if it so desires.

5                                            The RFAs

6           The Court set the limit for RFAs at 50, including subparts, per Defendant. (Order

7    (Doc. 84) ¶ D.1 at 2.) Plaintiff charges that the Defendants failed to respond to various

8    RFAs because responses were either partial or non-responsive to the request or

9    unjustifiably qualified by way of objections or wordsmithing. Plaintiff asks the Court to

10   find that approximately 38 RFAs have been left unanswered and, therefore, admitted.

11          The Court refers the parties to Fed. R. Civ. P. 36, which makes it clear that it is

12   proper to request admission of facts, the application of law to fact, or opinions about either.

13   36(a)(1)(A). Defendants may not object to answering an inquiry because it requires

14   application of law to fact. Defendants may, however, give as a reason for an inability to

15   admit or deny that there is an existence of a genuine issue of fact or law, but may not object

16   solely on the ground that the request presents a genuine issue for trial. Fed. R. Civ. P.36(a)

17   advisory committee's notes 1970 Amendment. In other words, Defendants may not object

18   to answering a RFA solely because it "calls for a legal conclusion," but it may be that a

19   RFA "involving the application of law to fact may create disputes between the parties

20   which must be resolved after much or all of the other discovery has been completed." *Id.*

21          If Defendants assert ambiguity or vagueness related to the meaning of a term, either

22   based on its general usage/meaning or due to a question of law that is unrelated to the case,

23   Defendants may qualify the answer by defining the term as they understand it for the

24   purpose of the answer. Fed. R. Civ. P. 36(a)(4).

25          The Defendants have three options: admit or deny or state why in detail the

26   answering party cannot truthfully admit or deny the RFA. When good faith requires a party

27   to qualify an answer or deny only a part of a matter, the answer must specify the part

28   admitted and qualify or deny the rest. Fed. R. Civ. P. 36(a)(4).

The requirement for specificity in answering a RFA in combination with the opportunity to qualify an answer allows Defendants to admit and deny a RFA in part. This does not mean that the Defendants are required to qualify answers to correct RFAs that are compound in violation of the requirement that each "matter be separately stated."  Fed. R. Civ. P. 36(a)(2). It does, however, enable a qualified answer where there is ambiguity or vagueness because it allows the answering party to explain its understanding of a term or a question of law for the purpose of the answer. *See also* (P MC, Ex. C: RFA for A. Wadlund (Doc. 95-1) at 29, Instructions ¶ 4 (instructing Defendants, if they object that a term or phrase is vague or ambiguous, to respond with your understanding of the term or phrase, admit it as so qualified and/or deny the rest)). Here, Defendants have objected on vagueness and ambiguity grounds, then answered the RFA without qualifying their understanding of the terms or phrases challenged as vague or ambiguous. Plaintiff submits that any terms used in the RFAs are either expressly defined in the instructions or given their ordinary meaning. Accordingly, Defendants do not need to qualify an answer that is based on either, but must qualify any answer that is based on some other understanding of the allegedly ambiguous or vague term in the RFA.

Qualifying an answer is not a reason to stray from the approach set out in Rule 36 for answers, and the "provisions of Rule 36 make it clear that admissions function very much as pleadings do." Rule 36(a) advisory committee's notes 1970 Amendment. There is simply no room for answers such as "may have" or "likely" or any other qualifier that necessarily defeats an admission or denial to a RFA. Also, qualifying an answer is not an opportunity to rewrite the RFA. Defendants are required to answer the RFAs with either: admit, deny, or admit and deny, with or without a qualifying explanation. There is no provision for explaining circumstances surrounding the matters that are the subject of a RFA. Qualifying an answer is limited to qualifications needed to admit, deny, or admit and deny, the matter presented in the RFA.

Likewise, Defendants cannot assert an answer is based on "no present recollection." The answering party may assert "lack of knowledge or information" as a reason for failing

to admit or deny only if the party *states* that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4) (emphasis added). In other words, the Defendants must make a reasonable inquiry and secure such knowledge and information as is readily obtainable, answer accordingly with an admission or denial, and state that it has done this. The Defendants' answers, which do not include this required statement, simply become statements that, essentially, Defendants can't remember. More is required under Rule 36(a)(4). Whether Defendants' lack of access to Berkadia's files or networks is an excuse for Defendants to not review "readily obtainable information" remains to be determined, but as noted by Plaintiff, Defendants have access to information on the receiving end of emails sent from the Berkadia computers to their personal computers and/or computers at IPA.

When, however, "requests to admit [become] so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome, []the responding party may obtain a protective order under Rule 26(c)." Fed. R. Civ. P.36(a) advisory committee's notes 1970 Amendment. Defendants have not requested such a protective order. Nevertheless, Defendants' response to the motion to compel argues that Plaintiff's overly burdensome discovery requests are an excuse for Defendants' abject failure to respond, especially to RFAs.

The Court addresses the Defendants' objection to the use of "You and Your," which is the same as the definition for the individually named Defendants, *see example*, (P MC, Ex. C: RFA for A. Wadlund (Doc. 95-1) at 30, Definitions ¶¶ 1 and 9), meaning the respective Defendant "and his attorneys, agents affiliates, employees, consultants, accountants, and any other representative as the context may require, whichever makes the request more inclusive." The Court sustains the Defendants' qualification that they do not answer on behalf of anyone other than themselves. Such an answer would have minimal evidentiary value. *Cf.*, Fed. R. Civ. P. 56(e) (supporting and opposing affidavits for summary judgment shall be made on personal knowledge, shall set forth such facts as

would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein); Fed. R. Evid. 602 (providing "[a] [lay] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").

The Court sustains the objection that this "most inclusive" definition for "You and Your" makes every RFA impermissibly compound. To answer truthfully to either admit or deny a matter in relation to what attorneys, agents, affiliates, employees, consultants, accountants, and any other representative, did in the context of a RFA requires a defendant, who does not know, to make a reasonable inquiry before attesting "that the information it knows or can readily obtain is insufficient to enable it to admit or deny." There is no need for the compound presentation of this inquiry. It is enough that there is a duty to inquire of these persons depending on the circumstances involved in the matters presented in the RFAs before answering each RFA with a denial or attesting to having insufficient information to admit or deny it. An admission by one person regarding another is of minimal evidentiary value to prove the merits of the case. Proportionality does not exist to support the burdensomeness that flows from these RFAs, especially since Plaintiff has tendered a large number of RFA's to each Defendant already.

The Court has addressed the Plaintiff's charge that Defendants' objections of vagueness and ambiguity are improper. The Court has reviewed the RFAs that are the subject of the motion to compel as set out in Exhibit J, pages 260-319. The Court is not going to wade through each of the 38 out of 51 RFAs challenged by Plaintiff as either partial, nonresponsive, or improperly qualified responses that add parameters outside the RFA. Instead, the Court provides an example of the type of analysis it declines to undertake but which the parties shall complete for the 38 RFAs that are the subject of the motion to compel.

Plaintiff asks Defendant A. Wadlund to admit he was a "seller" in the H&P Acquisition, (P MC, Ex. C: RFA for A. Wadlund (Doc. 95-1) at 33 ¶ 6), and complains that Defendant responds he was not a signing party to the transaction because Defendant

should have applied the common usage of the term "seller," which is "a person who sells," *see* Dictionary.com, assumably defining sells as "to transfer (goods) to or render (services) for another in exchange for money; dispose of to a purchaser for a price," *id.,*. Some similar definition would apply to answer RFA ¶7, which asks him to admit he "sold" client relationships in connection with the H&P acquisition. Defendants submit that the term "client(s) is equally vague and ambiguous, but its common meaning is "a person or group that uses the professional advice or services of a lawyer, accountant, advertising agency, architect, etc.; a customer." *Id.* There is no support for Defendants' assertion that the term "client(s)" requires a legal conclusion or qualification for "exclusive non-mortgage 'clients," (P MC, Ex. J ¶ 24 (Doc. 95-1) at 282), or for "exclusive relationship[s]," (Response (Doc. 98) at 6).

The Court agrees with Defendants that "members of IPA" does not have an applicable common usage term; a member is a person, animal, plant, group, etc., that is part of a society, party, community, taxon, or other body." Dictionary.com. The better definition is offered by Plaintiff in the motion to compel as: "employees, independent contractors, representatives, and agents of IPA." (P MC, Ex. J: RFAs ¶11 (Doc. 95-1) at 268.) The Plaintiff asserts all terms have their common meanings, unless otherwise specified, but failed to include any specified meaning for "members of IPA" with the RFAs. A meet and confer should have addressed this omission. The Defendants are as well-equipped as the Court to look up commonly used definitions when needed to clarify the terms used by Plaintiff in the RFAs or seek a meet and confer to address any terms where using a dictionary does not provide a meaningful definition.

Defendants are reminded that they may not object to answering an inquiry solely because it requires application of law to fact and a request for admission as to matters which are in dispute is not a reason to object. For example, Plaintiff asks Defendants to admit You *misappropriated* Berkadia's market analysis documents . . .." *Id.* ¶ 38 (Doc. 95-1) at 299. "The proper response in such cases is an answer . . .. In his answer, the party may

deny, or he may give as his reason for inability to admit or deny the existence of a genuine issue." Fed. R. Civ. P.36(a) advisory committee's notes 1970 Amendment.

As for the 38 RFAs that are at issue in the motion to compel, problems fall on both sides of the fence. Plaintiff pushes the envelope towards, if not past, the point of burdensomeness by asking compound RFAs. For example, the RFA ¶ 38 asks Defendants to admit "You misappropriated Berkadia's documents," and, also, asks for an admission that "You utilized them for Your benefit." Such improper compound questions require qualified answers of admit or deny, or denial of one part of the RFA and then the other. On the other hand, Defendants approached discovery as a means for advocating its case and failed to follow clear and express provisions in Rule 36, including seeking a protective order to address burdensomeness. Instead, Defendants just stopped responding to discovery.

The issues reflected in the briefing for the motion to compel are not complex, they do not even involve gray areas of the discovery process. The vast majority of them, if not all, could have been addressed with a good faith meeting and conference. Fed. R. Civ. P. 37.1(a)(1). Most certainly, now that the Court has defined the scope of relevancy for discovery and provided the directives herein, the parties can meet and confer to resolve the issues that have been red-flagged for each by the other. This will afford the Plaintiff an opportunity to address the compound nature of the RFAs, consider the already answered RFAs, and proportionality and relevancy before propounding no more than 38 amended or supplemental RFAs, including subparts. There shall be no compound RFAs; RFAs shall be readily answered by admit or deny, or admit and deny with limited need for qualification. Defendants shall use the common meaning for all terms unless a term has been expressly defined in the RFAs.

1
2

 2.  <u>Defendants' Motion to Compel Production by Berkadia of Rule 30(b)(6) deponent</u>
     <u>for deposition and to provide dates for depositions of several people</u>.

3
4
5

This motion is an example of the parties' failure to meet and confer in good faith, personally and in a meaningful way, to resolve discovery disputes prior to needlessly involving the Court in a dispute that is well within the parties' abilities to address.

6
7
8
9
10
11
12
13

Federal Rule 30(b)(6) allows for notice or subpoena for a deposition to be directed to an organization, which must then designate one or more officers, directors, or managing agents or other person, who consents, to testify on its behalf. The notice tendered "must describe with reasonable particularity the matters for examination"; then, the named organization must designate one or more officers, directors, or managing agents, or other persons, who consent, to testify on its behalf. The organization may set out the matters on which each person designated will testify, and the persons designated must testify about information known or reasonably available to the organization.

14
15
16
17
18
19
20
21

The requirement to describe the matters for examination with reasonable particularity works to benefit the party hoping to elicit information from the corporation by deposition, here Defendants, who would otherwise have to determine who at the corporation had the information sought. The organization's responsibility to designate a person or persons, who have information known or reasonably available to the organization curbs "'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization thereby to it." Committee Note to 1970 amendment to Rule 30(b)(6).

22
23
24
25
26
27
28

On May 18, 2022, Defendants served the Notice of Taking Rule 30(b)(6) Deposition on Plaintiff Berkadia. On June 10, 2022, Plaintiff sent a letter seeking to meet and confer regarding complaints about the topics contained in the Notice, including a lack of particularity leading to potential for overbreadth and lack of relevancy, and assertions that there were other better more cost-effective ways to obtain the information. (Ds MC, Ex. B: 6/10/2022 memo (Doc. 110-2) at 2-8)). Next, the record reflects a flurry in December of emails wherein the parties cannot even agree on whether there was a meet and confer

relevant to the Notice for taking the Rule 30(b)(6) deposition. *See* (P Resp. MC Rule 30(b)(6) Depo, Ex. 4: email 12/1/2022 at 10:28 am (asserting there was no meet and confer), email at 12:00 pm (entreating Defendants' counsel to stop the lies). The parties cannot agree on whether to set the date for the Rule 30(b)(6) deposition before setting dates for other depositions; refuse to produce dates for depositions until the other side makes such a production, and cannot agree on allowing zoom depositions for out of town (Tucson) deponents). *Id.,* Ex. 5: emails.

The Court, however, does not inquire further into whether Defendants have falsely represented that the parties, acting in good faith conducted a meet and confer to resolve the Plaintiff's concerns raised in the June 10, 2022, memo. The Plaintiff is correct that the Defendants have failed to comply with LRCiv 37.1. The Defendants' motion to compel failed to "set forth, separately from a memorandum of law, the following in separate, distinct, numbered paragraphs: (1) the question propounded, the interrogatory submitted, the designation requested, or the inspection requested; (2) the answer, designation or response received; and (3) the reason(s) why said answer designation or response is deficient." LRCiv. 37(a)(B)(4). *See* example: P MC, Ex. J (Doc. 95-1). The motion tp compel production of Rule 30(b)(6) deponent is denied for this reason. The motion is also denied because Plaintiff does not object to designating and producing a Rule 30(b)(6) deponent.

The Plaintiff has presented objections in the response to the motion to compel, which could have, and should have, been presented to Defendants during a LRCiv. 7.2(j) mandatory meet and confer. As noted by the Plaintiff, overly broad requests can be unduly burdensome, but Plaintiff may, as it has done here, agree to produce a corporate representative and set out the matters on which such person so designated will testify. *See* (Resp. MC Rule 30(b)(6) Depo. (Doc. 115) at 8-14. In this way, Plaintiff presents its understanding of its responsibility to present testimony about information known or reasonably available to the organization. Defendants may accept the limitations or respond with greater particularity. Whether the Plaintiff meets its responsibility to designate a

person or persons, who have information known or reasonably available to the organization will be assessed in relation to the particularity, or lack thereof, of the matters for examination as presented by the Defendants and the relevancy parameters of the case. In this way, Rule 30 and LRCiv. 7.2(j) ensure relevant discovery requests and meaningful responses.

For example, Defendants noticed deposition testimony in matter 1, as follows: "Berkadia's purchase of certain assets of Hendricks & Partners, Inc."

Plaintiff complained this topic was not presented with sufficiently particularity, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. This topic, however, seeks information similar to that sought by Plaintiff in its motion to compel the deposition of Don Hendricks. Of course, then Plaintiff argued that the circumstances surrounding the sale of Hendricks & Partners, Inc was relevant to show the reasonableness of the noncompete provisions included in the contracts, including the sales contract, the Transitional Compensation and Release Agreement (TCRA) and Defendants' Independent Contractor agreements. Relevancy has not changed.

Also, Plaintiff complained that there were multiple people at Berkdaia involved in the transaction and it took place a decade ago. This is the type of circumstance that Rule 30(b)(6) is designed to address because it allows Berkadia to designate someone to testify on its behalf, based on information known or reasonably available to it regarding the circumstances; the designated deponent testifies the reasonably available information gleaned from all sources.

As to overbreadth, Plaintiff charged that the topic could include the terms of the deal, which could be more easily and economically obtained through production of the document. While true, it is also relevant how the organization interprets those provisions and explains the factual basis for such interpretations. Plaintiff questions whether Defendants are asking for more detail on any specific terms or negotiations, but the Court cannot imagine the need to limit this topic beyond the parameters of relevancy to show that

1  alleged conduct breached restrictive noncompete and confidentiality provisions in the sales

2  contract, the TCRA, and the Independent Contractor Agreements.

3       Plaintiff is willing to produce a witness to testify regarding the purchase "only to

4  the extent that it relates to A. Wadlund's participation in the sale of Hendricks & Partners,

5  Inc and continued payments as a result."  (Resp. MC R. 30(b)(6) Depo (Doc. 115) at 8.)

6  Defendants' motion submits that "the topic of how Berkdai's purchase of certain assets

7  from Hendricks & Partners, Inc allows it to enforce the noncompete . . . is specific." (Ds

8  MC (Doc. 110) at 5). Yes, it is- but that of course is not the matter for testimony as

9  propounded, which stops short of defining with particularity that the "certain assets" of the

10  purchase are those relating to Berkadia's claim to enforce noncompete provisions. The

11  point being that in spite of themselves, the parties are in agreement on the particularized

12  line of inquiry for the Rule 30(b)(6) deposition topic 1.

13       The Court finds that the responses by the Plaintiff in the Response to the Motion for

14  Production of Rule 30(b)(6) Deponent provides information to Defendants sufficient for a

15  meaningful meet and confer, which if undertaken in good faith will afford sufficient

16  particularity in the matters for examination. Defendants shall immediately review the

17  testimony proposed by Plaintiff in the Response to be addressed by the deponent and reply

18  in writing with further particularity where such is desired. Otherwise, the Rule 30(b)

19  deposition shall proceed based on the particularity described by Plaintiff in the Response,

20  wherein it agrees to produce the Rule 30(b)(6) proponent. Rule 7.2(j) shall apply in the

21  event there are any further disputes between the parties related to the Rule 30(b)(6)

22  deposition.

23       As for the parties' inability to schedule depositions, including the Rule 30(b)(6)

24  deposition, they shall immediately provide at least three dates of availability for the

25  depositions for each other's deponents, and the timing for the Rule 30(b)(6) deposition may

26  proceed first at Defendants' discretion. As for taking depositions of out-of-town deponents

27  by zoom, the Court shall consider the propriety of such depositions on a case-by-case basis

28  in the event the parties are unable to resolve the issue.

1

<u>Conclusion</u>

2   In short, the Court is going to afford the parties one last chance to complete

3   discovery in this case, without considering sanctions. First, Plaintiff may amend or

4   supplement its discovery requests within the limits set out in this Order per Defendant, as

5   follows: 29 FRPs, including subparts; 10 ROGs, and 38 RFAs, including subparts.

6   Discovery shall not be duplicitous nor seek documents, communications, or

7   information from Defendants that may be obtained inhouse. This does not mean that

8   Plaintiff may not ask Defendants if they have documents other than those produced by the

9   Plaintiff or obtained inhouse.

10   Plaintiff shall not proffer compound discovery requests and shall apply *Kendall* to

11   determine whether subparts are precluded discrete questions: if the first question could be

12   answered fully and completely without answering the second question, the second question

13   is independent to the first and therefore discrete. Plaintiff shall seek relevant information

14   both temporally and substantively. Relevancy will be a low bar; evidence must be probative

15   of a fact of consequence in the matter and must have a tendency to make existence of that

16   fact more or less probable than it would have been without evidence. *U.S. v. Curtin*, 489

17   F.3d 935, 943–44 (9th Cir.2007).

18   The parties shall comply with all the discovery rules for answering discovery

19   requests and raising objections, including seeking a protective order in the event a party

20   declines to answer based on assertions that the amended or supplemental discovery is

21   overly burdensome and lacks proportionality. The parties shall comply with LRCiv. 7.2(j)

22   before coming to the Court with any further disputes related to answering amended or

23   supplemental discovery. Dueling emails do not satisfy the requirement that the parties meet

24   and confer. Any future motion to compel shall comply with the requirement for a separate

25   statement of the question, the answer, and reasoning regarding deficiency as set out

26   expressly in LRCiv. 37.1. Failure to comply with discovery rules or directives of this Court

27   shall have a prejudicial impact on the offending party. Any further motion to compel shall

28   include identification by the movant of specific measures proposed for resolution of the

dispute and whether such measures were accepted, rejected, or if countermeasures were proposed before coming to the Court for assistance.

**Accordingly,**

**IT IS ORDERED** that the Plaintiff's Motion to Compel Discovery Re: RFPs, ROGs, and RFAs (Doc. 95) is DENIED, without prejudice, as follows:

1. That within 14 days of the filing date of this Order, the Plaintiff shall file amended or supplemental RFPs, ROGs, and RFAs.

2. That Defendants shall have 14 days to answer or respond to the amended or supplemental discovery requests.

**IT IS FURTHER ORDERED** the Defendants' Motion to Compel Produce Rule 30(b)(6) Deponent; Provide Dates for Individual Depositions and Addresses (Doc. 110) is DENIED as moot, as follows:

1. Plaintiff agrees to produce a Rule 30(b)(6) deponent, subject to the particularized testimony set forth in the Response (Doc. 115) at pages 8 through 13.

2. That within 14 days of the filing date of this Order, the Defendants may amend or supplement the matters for examination to provide further particularization of the deposition topics.

3. That within 14 days of the filing date of this Order, the parties shall tender to each other at least 3 dates for each of the other parties' deponents, including the Rule 30(b)(6) deponent being produced by the Plaintiff who shall be deposed first.

4. That Depositions shall be held no later than the end of April and in May. This directive should not be used as an excuse to cancel or reschedule depositions that are currently set.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Compel Production of Joint Defense Agreements from Defendants (Doc. 114) is DENIED, without prejudice.

**IT IS FURTHER ORDERED** that the case management deadlines are extended as follows:

1. Document disclosures shall be completed by April 14, 2023;

2. Depositions shall be completed no later than May 31, 2023;

3. Discovery shall end by June 1, 2023, and

4. Dispositive motions shall be filed on or before June 14, 2023.

5. Counsel shall file a Joint Proposed Pretrial Order (Pretrial Statement) within thirty (30) days after resolution of the dispositive motions filed after the end of discovery. If no such motions are filed, a Joint Proposed Pretrial Order will be due on or before July 14, 2023.

**IT IS FURTHER ORDERED** that all discovery rules and directives for discovery issued by this Court shall be followed by the parties, including the requirement to meet and confer in good faith to resolve all discovery disputes prior to involving the Court; generally, discovery disputes can be resolved by the parties. *See* Fed. R. Civ. P. 11(b); *Nguyen v. Simpson Strong-Tie Co., Inc.*, No. 19-CV-07901-TSH, 2020 WL 5232564, at *8-9 (N.D. Cal. Sept. 2, 2020) (distinguishing between abuse of process and zealous advocacy; explaining purpose of Rule 11 is to deter baseless filings and carelessly executed litigation that wastes judicial resources).

Dated this 17th day of February, 2023.

Honorable Cindy K. Jorgenson
United States District Judge