WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berkadia Real Estate Advisors LLC,<br><br>Plaintiff,<br><br>v.<br><br>Arthur R Wadlund, et al.,<br><br>Defendants. | No. CV-22-00049-TUC-CKJ<br><br>**ORDER** |
| Arthur R. Wadlund, et al.,<br><br>Counterclaimants,<br><br>v.<br><br>Berkadia Real Estate Advisors LLC,<br><br>Counterdefendant. | |

      This is the sequel to the Court's last discovery Orders issued February 17 and 21, 2023, which set relevancy parameters for discovery by bookending the case one-year before and after the alleged breach of contract on January 10, 2022, with exception for discovery related to 2012 and 2013 negotiations involving the noncompete provisions included in Defendants' Berkadia employment agreements.

      Plaintiff now files a motion to compel discovery asserting that the discovery that has been completed suggests Defendants have not made complete disclosures for several discovery matters. Plaintiff also complains that Defendants continue to refuse to meet and confer regarding discovery disputes. *See* (Order (Doc. 163) at 1 (referencing Order (Doc.

133) at 25 (specifying that meet and confer may not be done by dueling emails; parties must speak directly to each other in person at least on the telephone).

<u>Fed. R. Civ. P. 37(a)(1): Duty to meet and confer prior to filing a motion to compel</u>

The Court begins with the meet and confer efforts undertaken in relation to this Motion to Compel. In the motion, Plaintiff makes a blanket complaint that Defendants' counsel has been nonresponsive to efforts to meet and confer and has been unwilling to meet and confer regarding the matters raised in the Motion to Compel.

Agreeing that the parties have not met nor conferred, Defendants blame the failure on Plaintiff. Defendants attach an April 28, 2023, email from Joel Herz to Stephanie Quincy and Sidney Turtchin wherein Herz asserts that he never agreed to Plaintiffs' proposal made on April 17, 2023, to meet and confer on April 27, 2023. According to Herz, he never agreed to meet on April 27, 2023, but offered to meet on May 2, 2023, after the deposition of Steve Gebing. (Response to Motion to Compel (Resp. MC), Ex. 8: email 4/28/23 (Doc. 166-8)). According to Herz, Plaintiff's counsel did not respond to the proposal to meet and confer after the May 2, 2023, deposition, did not bring up the subject at the May 2 deposition and did not attempt to reschedule a meet and confer at any time prior to filing the Motion to Compel. (Resp. MC (Doc. 166) at 17-18.) Herz asserts he believed the information provided April 28, 2023, resolved the matters between them.

In the Reply, Plaintiff asserts that the parties had agreed to meet and confer on April 27, 2023, and on that date, it sent a Zoom meeting invitation to Defendants' counsel, who never showed up. According to Plaintiff, Herz agreed to meet and confer after the May 2 deposition but then, Herz, who appeared at the in-person deposition of Gebing by Zoom, dropped off the meeting. The Court notes that the Herz April 28 email only says that he is "available" on May 2, it does not evince a firm date being set to meet and confer.

The Court finds that the parties did not properly meet and confer prior to Plaintiff filing the Motion to Compel, and this omission was apparent when the parties contacted the Court to set a briefing schedule for the Motion to Compel. It was clear that Defendants knew what discovery the Plaintiff wanted, did not believe it was a legitimate discovery

request, and had no intention of producing the requested discovery. The briefing for the Motion to Compel makes it clear that discovery in this case has been impeded by a lack of cooperation on both sides that does not benefit the parties' interests in resolving the dispute expeditiously on the merits. The rule requires certification by the movant that it has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1). In the future in this case, "certification" shall mean accompanying documentation of all proposed meetings for conferences up through the actually held meeting, telephonic or in-person, between the parties. The parties shall proceed to meet and confer in the future without judicial assistance, fully document the scheduling of the meet and confer and that it has been held, before contacting the Court.

1.  Text Messages (RFP Nos. 3, 4, 9 and 11)

Plaintiff complains it only received group text messages for the time prior to Defendants leaving Berkadia for C. Wadlund between himself, Panahi, and Sarbnoff. Plaintiff complains that many of the text messages received from A. Wadlund are incomplete as is evident because they reference other messages, which have not been produced. Plaintiff reports it received emails from CBRE, another competitive brokerage firm the Defendants were talking to about leaving Berkadia, pursuant to a subpoena to CBRE. Defendants have similarly produced CBRE emails. Plaintiff wants CBRE text messages too.

Defendants respond that they have searched their phones and produced all the text messages found there. According to A. Wadlund, he searched his test messages and emails and produced all text messages and emails responsive to Plaintiff's discovery requests. (Resp. MC, Ex. 4, A. Wadlund Affid. (Doc. 166-4) at 1-2.) "As set forth in the Declaration of Brian Chase, attached hereto as Exhibit 5, Clint Wadlund's phone was searched for the text messages that Plaintiff is seeking – including all communications with IPA and anyone employed by IPA and anyone at CBRE – and none were found. There was also a search for texts with the property owners. Defendants were talking to [CBRE] about leaving

Berkadia." (Resp. MC (Doc. 166) at 14.) C. Wadlund explains it was his practice prior to January 12, 2022, to not retain emails. "Arthur and Clint Wadlund cannot produce what they do not have." (Resp. MC (Doc. 166) at 14.)

The Court has reviewed the affidavits and finds that the Chase affidavit does not support C. Wadlund's assertion that his text messages were searched for communications related to CBRE, and A. Wadlund's affidavit provides no insight into the parameters of its search. The Court agrees with Plaintiff that the text message productions suggest the Defendants did not provide their communications with or related to CBRE. *See* (Reply MC (Doc. 178) (citing email by C. Wadlund saying "[p]robably smart for Art and I to switch to personal emails and text messages for communication. . . . Please add your cell's and I can get a text chain going." and "[p]lease reply back to Art's text regarding #4 of the Recruitment Agreement and we will act accordingly.")

According to Plaintiff, the text messages produced by Defendants are incomplete, as follows:

> First, Defendants have not produced all text message between themselves regarding IPA in the year before they left Berkadia (RFP No. 9). A. Wadlund produced a total of seven text messages with C. Wadlund over this one-year period, most of them months apart from one another. Based on the text messages A. Wadlund has produced, it is evident that he cherrypicked individual texts without providing full conversations. For example, on September 3, 2021, A. Wadldund texted C. Wadlund saying: "[w]e really need some help so jump on the IPA and CBRE thing. I'm running out of gas." (Dkt. 152-1 at 108). The next text message between Defendants that A. Wadlund produced was over two months later on November 15, 2022, and it was unrelated to the earlier text message. (Id.). Similarly, on November 25, 2022, C. Wadlund sent A. Wadlund a text discussing A. Wadlund's planned retirement and their move to IPA. (*Id.*). The next text message between Defendants that A. Wadlund produced was nearly a month later on December 19, 2022, and it was on a different topic. (*Id*.).

(Reply MC (Doc. 178) at 3.) Plaintiff does not seek all text messages between Defendants, but responsive text messages are not to be limited strictly to those texts that contain the word "IPA" and should include any text messages that form part of those conversations, which are necessary to provide relevant context.

In a sur-reply, Defendants assert they have produced additional text messages that they obtained from IPA. In a sur sur-reply, Plaintiff continues to seek messages from, to,

or between Defendants regarding IPA during the year before they left Berkadia and text messages to and from or about CBRE.

The Court finds that the Defendants have not searched their text messages for communications related to CBRE. Additionally, it is also difficult to determine from either A. Wadlund's affidavit or the forensic expert's affidavit that the text messages were adequately reviewed by the parties for context or if only cursory word searches were conducted. Therefore, Plaintiff shall provide a list of text messages they believe are incomplete to the Defendants to facilitate a more comprehensive contextual search for text message communications that appear to likely have existed at one point in time.

2. Payments from IPA to Defendants[1]

According to Plaintiff, Defendants refused to produce anything beyond A. Wadlund's redacted bank statement, therefore, they have not fully responded to Plaintiff's Supplemental Discovery Requests for documents and communications regarding any payments and/or loans Defendants received from IPA, including any commissions. Specifically, Plaintiff accuse Defendants of not answering interrogatory 5 asking Defendants to identify payments they received from IPA, including the "date, amount, and what the payment was for." (MC (Doc. 164) at 15). "Knowing what each payment was for is essential to determine how much Defendants received for each property at issue in the case." *Id.*

Subsequent to the motion, Defendants updated this discovery. Still, Plaintiff complains that the list of commissions is incomplete because it does not include a $3,000,000 forgivable loan, paid in installments, from IPA to Defendants. Plaintiff challenges the accuracy and completeness of the discovery when the disclosures are compared to the bank statement produced by A. Wadlund seven amounts are missing. Plaintiff complains that C. Wadlund has only produced his 2022 Form 1099, which shows he was paid $1,010,422.90 in comparison to the list which shows he only received $978,633.72 for the year. Now, Plaintiff wants the documents relied on by Defendants to

---

[1] The Court has previously held that this discovery is relevant. (Order (Doc. 133) at 12.)

create the updated list showing the date, amount, and reason for each payment. Plaintiff notes that Defendants admitted during depositions that a previously created and produced list of properties was not accurate.

In a sur-reply, Defendants provide further updates to the list, specifically, explaining the seven discrepancies identified by Plaintiff. (Sur-reply (Doc. 180) at 2-3.) In a sur sur-reply, Plaintiff again requests the underlying documents that Defendants have relied on to create the lists of payments made by IPA to Defendants. More, importantly Plaintiff notes that only A. Wadlund produced his bank statements, not C. Wadlund. Without A. Wadlund's bank statements, Plaintiff would not have been able to identify the seven discrepancies in Defendants' proffered list of payments which have now been explained.

Unfortunately, the back and forth played out in writing between the parties is an example of what they should have done during meaningful good faith "meet and confer" efforts. The Court concludes that there has now been complete discovery related to payments from IPA to A. Wadlund. The Court cannot say the same for C. Wadlund. Like A. Wadlund did, Defendant C. Wadlund shall provide his bank statements to Plaintiff so Plaintiff may identify any discrepancies in the lists Defendants have tendered and seek clarification.

### 3.  Defendants' Communications with Property Owners Post-employment with IPA

The Plaintiff shall provide Defendants with a list of its alleged clients that are at issue in this case. Defendants shall, if they have not already, produce their communications with these property owners beginning one-year before Defendants left Berkadia and ending one-year after or January 10, 2023. Without any date limitation, the Defendants shall produce contact information for property owners that Defendants have asked to sign letters of support, who Defendants have disclosed as possible witnesses.

### 4.  Joint Defense Agreement

Defendants and IPA assert a privilege under the "common interest" or "joint defense" rule, an exception to ordinary waiver rules for confidentiality. These exceptions allow attorneys for different clients, and even nonparties, who pursue a common legal

strategy to communicate with each other. *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir.1965); *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir.1990) (collecting cases). A shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. *Id.* The parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement —whether written or unwritten, *cf. Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir.1964), and like all privileges, these exceptions to disclosure are narrowly construed, *United States v. Nixon*, 418 U.S. 683, 709 (1974).

The Restatement (Third) of Law Governing Lawyers ("Restatement") (2000), Restatement § 76(1) describes the common interest doctrine as follows:

> If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged [as attorney-client communications] that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.
>
> The doctrine does not create a privilege, but is an exception to the rule that communications between a person and a lawyer representing another person are not privileged. Restatement § 76, Reporters Note cmt. c.

*Arizona Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 141–42 (Ct. App. 2003).

Communications exchanged subject to the common interest doctrine must themselves be privileged as well as related to the parties' common interest, "which may be either legal, factual, or strategic in character." Restatement § 76 cmt. e, Reporters Note cmt. d.

The joint defense rule only protects communications if the communication is made by separate parties in the course of a matter of common interest, the communication is designed to further that effort, without attorney-client or work-product privileges being waived by third-party disclosures. The exception may apply prior to the commencement of litigation but there must be some evidence that the communication was made "in pursuit of a joint strategy in accordance with some form of agreement—whether written or

- 7 -

unwritten*." In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). A written "joint defense agreement," does not create the privilege. *Arizona Indep. Redistr. Comm'n,* 206 Ariz. at 141 n. 11 (citing *See Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's London*, 176 Misc.2d 605, 676 N.Y.S.2d 727, 730–31, 733 (Sup.Ct.1998) ("[a] private agreement by the parties to protect communications cannot create a privilege") (citation omitted)).

Plaintiff complains that Defendants have refused to make disclosures of communications, pursuant to an alleged joint defense agreement but refused to produce the Joint Defense Agreement. Plaintiff represents that at A. Wadlund's deposition on February 10, 2023, he testified that he has not entered into any agreements with IPA, Krista or Lisa, and C. Wadlund testified at his deposition on February 11, 2023, that he doesn't know of any such agreements. Therefore, Plaintiff challenges the asserted exceptions to disclosure and asks the Court to confirm the existence of the agreement.

Plaintiff also argues that Defendants waived any assertion of "common interest" privilege, which it asserted for the first time in the March 17, 2023, Supplemental Privilege Log. "Common Interest" was not asserted in the Second Amended Privilege Log produced on February 22, 2023, after this Court ordered Defendants to revise the deficient log or "immediately disclose all allegedly privileged documents." (Order (Doc. 133) at 7.)

"On March 17, 2023, after Plaintiff pointed out that documents Defendants were withholding were not privileged because they included third parties, Defendants supplemented their privilege log to indicate they withheld documents based on the common interest doctrine." (Reply MC (Doc. 178) at 6-7 (citing Ex. 7, Ds Supp. PL (Doc. 178-1) at 26).)

None of the privilege logs are dated, but the Court discerns that the Defendants' [Joint] Supplemental Privilege Log attached as Ex. 7 to Plaintiff's Reply is the relevant log for purposes of the Motion to Compel. Plaintiff does not identify the specific entries on the log that it seeks, but there are five entries dated 12/4/21 and 12/5/21, and 112 entries for 12/12/21 to 1/31/22. The Court notes that the Defendants claim multiple privileges, but

Plaintiff only challenges Defendants' claims of common interest and joint defense, therefore, the Court finds the Defendants' underlying claims of attorney-client and work-product privilege are legitimate.

By comparing the privilege logs for February 22, 2023, and March 17, 2023, it becomes apparent that in February, Defendants used "Joint Defense" to identify documents that were disclosed by Defendants to third-party IPA and/or to Defendant C. Wadlund's attorneys' Saffer and Valentine. In March, for the first-time attorney Herz, A. Wadlund's attorney, identified himself as attorney for C. Wadlund too until January 19, 2021. (Reply MC, Ex. 7, 3/17/23 Joint Supp. PL (Doc. 178-1) at 29.) Correspondingly, the Defendants identified such disclosures as being made between them as protected by the common interest doctrine.

Specifically, in March, the privilege log duplicatively identified all the claims of joint defense as common interest but the only new additions were communications sent between Defendants while both were represented by Herz. This explains the differences between representations on the February and March privilege log, not an untimely claim of common interest. The Court rejects the Plaintiff's argument that Defendants' waived the right to assert the common interest rule as an exception to disclosure.

According to Defendants, on January 12, 2022, they received threatening letters from Berkadia and "jointly retained attorney Herz. Later, Defendant C. Wadlund engaged separate and independent counsel Safer and Valentine. The privilege log supports this assertion because it reflects the first disclosures by Herz to Saffer on January 25, 2022, (Reply MC, Ex. 7, 3/17/23 Joint Supp. PL (Doc. 178-1) at 33, 35), and an email re: Joint Defense Agreement to Saffer on January 26, 2022, *id.* at 39.

It is not at all clear to the Court that Plaintiff is challenging nondisclosures of communications between the Defendants and attorney Herz during the time they allegedly were both represented by him or communications between their respective attorneys as not privileged. Without more, the Court does not address the merits of Defendants' nondisclosure of communications between them and attorney Herz, his communications

with them and/or C. Wadlund's attorneys Saffer/Valentine. The crux of Plaintiff's motion to compel documents reflected on the March privilege log appears to be those involving IPA.

In support of nondisclosure of communications involving third-party IPA, the Defendants submit they and IPA received a threatening letter from Berkadia around January 12, 2022, and this is the asserted effective date of the Joint Defense Agreement signed by Defendants and IPA on January 31, 2022, which was the date Plaintiff filed this action. Defendants offer, and the Court agrees to, an *in camera* review of the Joint Defense Agreement. For purposes of the Motion to Compel, the Court assumes such agreement exists in writing and was signed on January 31, 2022, by both Defendants and IPA.[2]

In Reply, Plaintiff clarifies that it is not asserting there must be a written Joint Defense Agreement, but it argues the Defendants have not established any agreement, written or oral, existed prior to January 31, 2022, which was the date Plaintiff filed this action. Plaintiff believes this was the first time Defendants and nonparty IPA discussed a joint defense agreement. Plaintiff refers to privilege log entries dated January 31, 2022, that reflect an "Email re: Joint Defense Agreement." (Reply, Ex. 7, Ds. Supplemental Privilege Log (Doc. 178-1) at 44.) The Plaintiff argues this does not support Defendants assertion reflected as docket entry for January 12, 2022, for "Joint Defense Agreement relating to any lawsuit or arbitration, or claims made by Berkadia against any signatory to Defense Agreement (Joel Herz, Jonathan Saffer, Spencer Reed)." *Id.* at 26. Unlike all the other privilege log entries, this January 12, 2022, entry does not identify an actual document and does not include "Date Document Was Generated, Prepared Or Dated." Instead, it qualifies the January 12, 2022, log entry as: "effective date."

Plaintiff makes a solid argument that the privilege log entries suggest the Joint Defense Agreement was entered into on January 31, 2022. There is no email or other log entry reflecting any communication between the Defendants' counsel and counsel for IPA

---

[2] For purposes of this Order, the Court has referred to IPA in reference to all nonparties, but in the context of discussing the joint defense rule, the Court means Marcus Millichap because the Court assumes it was the only nonparty signator to the Joint Defense Agreement.

- 10 -

on January 12, 2022, related to a joint defense agreement or anything else. This stands in stark comparison to the several January 31, 2022, entries reflecting "email re: Joint Defense Agreement" being sent between the respective attorneys representing both Defendants and IPA, *see* (Reply MC, Ex. 7, 3/17/23 Joint Supp. PL (Doc. 178-1) at 43-44), or the privilege log entries reflecting the Herz-Saffer Joint Defense Agreement signed on or around January 26, 2022, *id.* at 39.

The Court will afford Defendants an opportunity to support an earlier "effective" date for the Joint Defense Agreement signed on January 31, 2022, and Defendants may do so *in camera*. "[B]efore a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that [the privilege may not apply]." *United States v. Zolin*, 491 U.S. 554, 574-75 (1989). Here, Defendants voluntarily offer to present the January 31, 2022, written agreement. The Court finds that the record before it supports a reasonable belief that *in camera* review may yield evidence that the privilege may not apply prior to January 31, 2022.

The only support for Defendants' assertion that the Joint Defense Agreement and common interest doctrine covers communications between IPA and Defendants as of January 12, 2022, is the alleged fact that IPA and Defendants received threatening letters from Plaintiff around that time. Unless Defendants can present something more than the January 31, 2022, written agreement and the January 12, 2022, Berkadia cease and desist letters, the Defendants and IPA may not invoke the "common interest" or "joint defense" rules prior to January 31, 2022, to except disclosures.

Conclusion

The Plaintiff submits that the Defendants' and IPA's discovery abuses warrant good cause to extend discovery. For example, Plaintiff complains it has had to pursue discovery of Defendants' emails by subpoena to CBRE. It has similarly had difficulty discovering the Phantom Stock Agreement from A. Wadlund, but Plaintiff fails to recognize that as a partner to the H&P-Berkadia sale, it also had a copy of the Phantom Stock Agreement

which it cannot find. The Phantom Stock Agreement has been recently obtained from H&P's attorneys in response to a subpoena. (Sur sur-reply (Doc .187) at 3.)

On June 16, 2023, Plaintiff filed an additional Motion to Compel seeking the 2012 tax return for A. Wadlund. Plaintiff submits that on April 11, 2023, Mr. Hendricks testified at his deposition that the Phantom Stock Appreciation Units did not represent deferred compensation to A. Wadlund; H&P never withheld or deferred compensation for A. Wadlund. On April 24, 2023, Plaintiff asked for A. Wadlund's 2012 federal and state tax returns "because A. Wadlund's tax returns would show whether he treated the Closing Bonus and Closing Phantom Stock Award Payment as income, suggesting it was deferred compensation, or as capital gains, showing it was for the sale of his stock in H&P." (MC (Doc. 185) at 3 (citing Ex. 4, P 2nd Supp. Doc. Request (Doc. 185-1)).

A. Wadlund argues that he was not an owner of H&P, and proceeds related to the Phantom Stock were a type of compensation owed him and not related to the sale of H&P to Plaintiff; he was not an owner or shareholder and not an employee; "he was only an independent contractor who was owed money by Hendricks for deferred compensation." (Resp. to MC 2012 Tax Returns (Doc. 186) at 5.)  There is no basis to support Plaintiff's assertion that the 8+ years duration and multi-state reach of the restrictive covenant was necessary to protect Berkadia's good will because as a matter of law both are excessive and unenforceable. *Id.* at 5-6.

Defendants have not, however, filed a dispositive motion challenging the enforceability of the restrictive covenant as a matter of law. The claim remains and discovery is relevant to establish reasonableness, including whether the restrictive covenant was entered into in the context of the sale of the H&P business to the Plaintiff. The 2012 tax returns are relevant to show whether A. Wadlund treated the Phantom Stock proceeds in 2012 as income of capital gains: Tax returns are highly confidential materials; public policy interests guard against disclosures of tax returns to encourage taxpayers to file complete and accurate returns to ensure the tax laws function properly. (Resp. to MC 2012 tax returns (Doc. 186) at 6 (citing *Premium Serv. Corp. v. Sperry Hutchinson Co.*,

- 12 -

511 F.2d 225, 229 (9th Cir. 1975)). The Court looks to whether there is a compelling need for the tax return. *Id.* (citations omitted).

According to Plaintiff, the parties met and conferred regarding this document request on May 24, 2023. (Motion to Compel 2012 Tax Return (MC 2012 Tax Return, Ex., email Coss to Herz sent 5/26/2023 (Doc. 185-5)). At the meet and confer, Defendants' attorney reported that he had not asked A. Wadlund if he had the 2012 tax return. Plaintiff offered to accept extensive redaction of the return or "attorney eyes only" limits to protect confidentiality. (MC 2012 Tax Return (Doc. 185) at 3-4.) Plaintiff reports Defendants rejected the limited disclosure of the 2012 tax return. *Id.* There were no further meet and confer attempts to resolve this discovery.

In his Response, Defendant A. Wadlund submits that "'[h]is 2012 tax return will show that he did not have any capital gains income from Hendricks & Partners in 2012, and he is prepared to supply the capital gains section of his 2012 tax return to the Court for *in camera* review, showing that he had no capital gains income in 2012 from Hendricks & Partners and that the Phantom Stock Appreciation Award Units were not paid as capital gains." (Resp. to MC 2012 Tax Returns (Doc. 186) at 8 (quoting (Resp. MC (Doc. 166) at 16-17.) In other words, A. Wadlund proposes responding to the discovery request with an admission and review *in camera* by the Court.

The Response was filed on June 18, 2023, two days after the Plaintiff filed the Motion to Compel Production of Defendant Arthur R Wadlund's 2012 Tax Returns on June 16, 2023. The Plaintiff sought this discovery, pursuant to a Second Supplemental Request for Documents on April 24, 2023. On May 24, 2023, Defendant A. Wadlund responded and objected to disclosing the tax return. The parties met and conferred the same day as noted above. The Court makes this record not to resolve the merit of the discovery dispute, which has been worked out by the parties pursuant to Plaintiffs offer to accept limited discovery and Defendant A. Wadlund's agreement to make a party admission in lieu of disclosing his tax return. Instead, the Court makes the record as an example of the discovery abuses in this case by all parties which have resulted in repeated and unnecessary

wastes of judicial resources. Given Plaintiff's willingness to accept limits to protect confidentiality in the disclosure of A. Wadlund's 2012 tax return, meaningful and good faith meetings to confer should have resolved this when Plaintiff sought the discovery in May within an equally short period of time, 2 days, as it was resolved after Plaintiff filed the Motion to Compel in June.

The Court finds that the discovery disputes between the parties reflect zealousness by Plaintiff and resistance from Defendants without the cooperation from both sides that is needed to complete discovery. It leaves the Court with a clear sense that neither party is acting in good faith, as is evident from the limited relief granted herein that completes all discovery in this case.

For text messages, the Plaintiff shall provide Defendants with text messages identified as incomplete partial disclosures of more involved communications, and Defendants shall conduct comprehensive searches of their test messages in the context of these specific communications. Defendants shall search for and disclose text messages for communications with CBRE.

For payments by IPA to Defendants, C. Wadlund shall produce his bank statements to Plaintiff.

For allegedly improper communications with Plaintiff's clients post-IPA employment by Defendants, Plaintiff shall provide a list of clients it asserts are at issue and Defendants shall produce, if not already produced, all communications with such clients after leaving Berkadia until January 10, 2023. If not already disclosed, the Defendants shall produce contact information for property owners that Defendants have asked to sign letters of support, who Defendants have disclosed as possible witnesses.

Defendants shall disclose communications that have been excepted under the Joint Defense Agreement entered on January 31, 2022, unless they can provide some evidence that the parties entered into this agreement on January 12, 2023.

The rulings by the Court to resolve these four discovery disputes have not involved questions of law that needed to be decided by the Court. Relevancy was not seriously

challenged. Instead, the parties are at odds as to whether full disclosure was attained. The Court finds that with even a small degree of good faith cooperation on both sides, these discovery disputes could have and should have been resolved by the parties without judicial involvement. The Court will grant the motion in part and deny it in part, pursuant to Fed. R. Civ. P. 37(5)(C), and will not apportion reasonable expenses for the motion beyond where they have fallen.

**Accordingly,**

**IT IS ORDERED** that the Motion to Compel (Docs. 152 (Redacted),164 (Sealed)) is GRANTED IN PART AND DENIED IN PART, as follows:

1. The Plaintiff shall provide Defendants with text messages identified as incomplete partial disclosures of more involved communications, and Defendants shall conduct comprehensive searches of their test messages in the context of these specific communications. Defendants shall search for and disclose text messages for communications with CBRE.
2. C. Wadlund shall produce his bank statements to Plaintiff.
3. Plaintiff shall provide a list of clients it asserts are at issue and Defendants shall produce, if not already produced, all communications with such clients after leaving Berkadia until January 10, 2023. If not already disclosed, the Defendants shall produce contact information for property owners that Defendants have asked to sign letters of support, who Defendants have disclosed as possible witnesses.
4. Defendants shall disclose communications that have been excepted under the Joint Defense Agreement entered on January 31, 2022, unless they can provide some evidence that the parties entered into this agreement on January 12, 2023.

**IT IS FURTHER ORDERED** that within seven days of the filing date of this Order, Defendants shall file *in camera* any evidence beyond that submitted in opposition to the Motion to Compel to establish the January 12, 2023, effective date of the Joint Defense Agreement.

**IT IS FURTHER ORDERED** that the Motion to Compel Defendant A. Wadlund's 2012 Tax Return (Docs. 181 (Redacted),185 (Sealed)) is DENIED AS MOOT because A. Wadlund agrees to establish the requisite facts by admission.

**IT IS FURTHER ORDERED** that within seven days of the filing date of this Order, A. Wadlund shall produce the admission and file the tax return *in camera* with the Court.

**IT IS FURTHER ORDERED** that the Motion to Extend Discovery (Docs. 152 (Redacted),164 (Sealed)) is GRANTED for 30 days from the filing date of this Order for the sole purpose of completing the discovery provided for in this Order. All other discovery has ended. It remains the directive of this Court that dispositive motions shall be due after the close of discovery.

**IT FURTHER ORDERED** that in the future in this case, "certification" shall mean accompanying documentation of all proposed meetings for conferences up through the actually held meeting, telephonic or in-person, between the parties. The parties shall proceed to meet and confer in the future without judicial assistance, fully document the scheduling of the meet and confer and that it has been held, before contacting the Court.

Dated this 29th day of August, 2023.

_____
Honorable Cindy K. Jorgenson
United States District Judge