**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berkadia Real Estate Advisors LLC, | No. CV-22-00049-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Arthur R Wadlund, et al., | |
| Defendants. | |

Plaintiff seeks sanctions against Defendants and Nonparties Investment Property Advisors (IPA) and Lisa Hartley (Hartley) for spoliation of evidence. Plaintiff asks the Court for sanctions as follows: 1) enter a default judgment in favor of Berkadia on the claims of trade secret misappropriation and breach of the confidentiality agreement; 2) impose an adverse inference that the lost evidence would have been favorable to Berkadia, and 3) award attorneys' fees and costs resulting from spoliation including communications seeking the discovery, the Rule 30(b)(6) IPA deposition of Sarbonoff, and briefing the Motion for Sanctions. For the reasons explained below, the Court denies the Motion for Sanctions. The Court also rules on the discovery presented *in camera* and clarifies the deadlines and provisions for filing dispositive motions.

Plaintiff complains that Defendants and the Nonparties lost or destroyed a hard drive that Hartley took from Berkadia to IPA. It is undisputed that Hartley took a hard drive she

used at Berkadia with her when she moved to IPA. She admits she gave it to someone for it to be "quarantined."[1] The hard drive cannot be located.

While Defendants assert the data was stored on a thumb drive, Hartley, IPA, and Berkadia refer to the electronic stored information as being on a hard drive. Not that it matters, except for the ease occasioned in loosing thumb drives compared to misplacing a hard drive. Plaintiff describes the loss/spoliation of evidence by Defendants and the Nonparties as egregious for various reasons. Defendants and Nonparties object to this characterization and argue the lost hard drive stored backup data that Plaintiff has in its possession already.

Hartley, who works as the Transaction Manger at IPA, started working in this capacity for A. Wadlund at Hendricks & Partners (H&P) around 2000. She explains that over the approximately last 20 years, she began saving files to an archive backup external hard drive to prevent any data losses. When she and A. Wadlund began working for Berkadia, they continued using the external hard drive as backup storage for Defendants' client-property files. According to her, Berkadia was aware of this practice and never objected. Berkadia required her to, and she did, periodically upload the Wadlund property files to Berkadia's data system. She did not delete any files from Berkadia's system when she left. Shortly after arriving at IPA, she was informed that she could not use the hard drive and gave it to someone, but can't remember who took it. She attests she did not lose or destroy the backup external hard drive, and she has tried to find it by checking the IPA offices and asking A. and C. Wadlund if they know where the hard drive is now. She has not been able to find it. (Hartley Affid. (Doc. 192-2) at 2-3.) Hartley's affidavit corresponds to her deposition testimony. *See* (Motion for Sanctions (MS), Hartley Depo. at 50-53 (Doc. 190-1 at 3-7)).

Hartley admits that she and Defendants had some escrows that they were working on when she left and those files may have been transferred from Berkadia to IPA via the external hard drive, but she attests Berkadia knew and had that information because she

---

[1] At first, she described it as being taken to be "destroyed" but further testimony reflected she more accurately described as being taken to be quarantined.

was communicating with them and copying them on anything she sent related to the three escrows. (Ds Resp., Ex. A, Hartley Depo. at 169 (Doc.191 at 17).

Instead of securing the hard drive, Plaintiff charges that Defendants allowed it to be lost and concealed the loss until it came to light during the Hartley deposition, then failed to make any effort to find it.

Defendants submit that third-parties IPA and Hartley had possession of the hard drive, not them. Plaintiff argues that these Nonparties' failure to secure this evidence should be imputed to Defendants because as independent contractors, Defendants had control over the hard drive and allowed it to be in the hands of these Nonparties. The Court agrees that the hard drive was controlled by the Defendants, not by the Nonparties. The Court rejects Defendants' assertion that A. or C. Wadlund did not know Hartley had and used the backup hard drive because she attested it had been used by them as their data filing system for many years.

Additionally, other than Hartley's deposition that she has unsuccessfully looked for the hard drive at the IPA offices, Defendants do not explain why they did not personally secure the hard drive, which was their backup filing system. It appears that Defendants left it to IPA to quarantine the hard drive even though Hartley believed it was going to be given to A. Wadlund. There are no attestations from Defendants, IPA,[2] Hartley or their counsel explaining the efforts taken to quarantine the hard drive and why those efforts failed or who has looked and where they have looked for it. In short, the Court is not confident that Defendants, Hartley, and IPA have in fact conducted a thorough search for the hard drive. The Defendants shall conduct such a search and file appropriate affidavits reflecting their efforts to find the hard drive that was taken from Hartley by someone at IPA.

Defendants and Nonparties argue that because the hard drive was a backup data file, there was no information there that Berkadia doesn't already have in its data systems. It

---

[2] According to Plaintiff, "[d]uring IPA's Rule 30(b)(6) deposition, its designated witness testified that IPA has literally done nothing to determine where the external hard drive is or who accessed it." (MS (Doc. 190) at 2; *see also* (Sarbinoff Depo., Ex. 19 (Doc. 190-4) at 21-25 (admitting he has no knowledge of where the hard drive is and never talked to Hartley, Defendants, or anyone else at IPA about locating it but thought legal counsel had made inquiries).

logically follows that anything taken from Berkadia on the hard drive and downloaded to IPA would likewise be duplicated there.

Rather than wading into the alleged egregious conduct by Defendants, IPA and Hartley in losing the hard drive and allegedly not doing enough to find it, the Court looks first at the significance of the lost data.

The Court rejects Plaintiff's contention that the hard drive data cannot be restored or replaced because it contained data going back two decades and Hartley cannot remember what was on it except, she admitted it contained the type of data that is at issue in this case as alleged by Berkadia as being its confidential and proprietary property. Most importantly, Plaintiff submits that the hard drive would show, who accessed it, when it was accessed, and what files they opened and whether they printed or saved them somewhere else.

The Court is not persuaded that this information has not already been gleaned from searching the data systems of Berkadia and IPA and the Defendants' records. The Court finds no evidence to call into question Hartley's attestations that it was her practice to use the hard drive as a backup, and the data there was duplicated on Berkadia's data system. Plaintiff has obtained discovery of communications by Defendants with IPA, including Hartley. If discovery has not captured communications from Hartley to IPA, the Court will allow this. Accordingly, Plaintiff has or will have obtained evidence of any and all communications, including any transfers of data that may have come from the hard drive to IPA.

While the relevance of the documents on the destroyed hard drive cannot be ascertained because they no longer exist, the relevance of any documents prepared by A. and C. Wadlund, including those placed on the back up hard drive can be established by looking to the duplicative Berkadia data system or IPA's data files that were created by Defendants or Hartley.

The Court finds that Defendants and Nonparties had a duty to preserve the evidence on the hard drive and failed to do so. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a

party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court upon finding prejudice to another party from loss of the information , may order measures no greater than necessary to cure the prejudice or "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may issue the types of sanctions requested by the Plaintiff. Fed. R. Civ. P. R. 37(e). The Court finds that the relevant data, January 10, 2021, through January 10, 2023, from the lost hard drive can be restored or replaced from data in Berkadia's own system and through discovery that has already been produced by Defendants and Nonparties. The Court presumes that the duplicative data has already been produced by Defendants, IPA, and Hartley. If necessary, however, the Court will allow additional discovery to ascertain transfers of data by Hartley to IPA. The Court reserves giving this directive until and unless a robust search by Defendants, Hartley, and IPA fails to locate the lost hard drive.

**Accordingly,**

**IT IS ORDERED** that the Motion for Sanctions (Doc. 190) is DENIED.

**IT IS FURTHER ORDERED** that within 7 days of the filing date of this Order, the Defendants, IPA, Hartley, and their attorneys shall conduct a coordinated and thorough search to locate the lost hard drive and file a notice with the Court of the search efforts undertaken by them and the results.

**IT IS FURTHER ORDERED** that in the event the search does not find the hard drive, then Plaintiff may have 14 days to request additional discovery if necessary to identify any transfers of data by Hartley to IPA. IPA and Hartley shall have 14 days to produce any such requested discovery.

**IT IS FURTHER ORDERED** that after *in camera* review of A. Wadlund's 2012 tax return, the Court confirms that he did not claim the proceeds from the phantom stock sale as a capital gain.

**IT IS FURTHER ORDERED** that based on *in camera* review, the Court finds evidence that a joint strategy and joint defense agreement existed between Defendants and

IPA as of January 18, 2021. All disclosures identified on the privilege log before then excepted from production based on a Joint Defense Agreement between Defendants and IPA are disallowed and shall be disclosed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the documents reviewed by the Court *in camera* UNDER SEAL.

**IT IS FURTHER ORDERED** that the Motion for Telephonic Status Conference (Doc. 198) is DENIED; the Court clarifies that dispositive motions are due 30 days after the close of discovery, which ends for all discovery as of September 30, 2023, unless additional discovery is required to redress the lost hard drive.

**IT IS FURTHER ORDERED** that there is no limit on the number of dispositive motions a party may file but the Court requires the parties to be cognitive of conserving judicial resources by not presenting repetitive arguments in multiple briefs or splitting up issues that are better combined in one brief. Under such circumstances, the Court may strike the motions with further directives for their presentation. Leave of the Court may be sought if there is a need for extra pages. LR Civ. 7.2(e).

Dated this 14th day of September, 2023.

Honorable Cindy K. Jorgenson
United States District Judge