WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berkadia Real Estate Advisors LLC, | No. CV-22-00049-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Arthur R Wadlund, et al., | |
| Defendants. | |
| Arthur R Wadlund, et al., | |
| Plaintiffs, | |
| v. | |
| Berkadia Real Estate Advisors LLC, | |
| Defendant. | |

The following has been disclosed to the Court: "Plaintiff, Berkadia Real Estate Advisors LLC, a private non-governmental party, . . . is an indirect subsidiary of Berkshire Hathaway, Inc. (Berkshire) and Jefferies Financial Group Inc., both of which are publicly-traded companies," (Corporate Disclosure (Doc. 6) at 2), Berkshire is a "parent corporation" of Berkadia for recusal purposes (Supp. Rule 26(f) Report (Doc. 70) at 2), and was more recently described as "a 50/50 joint venture between Berkshire and Jefferies Financial Group, Inc. ("Jeffries")," (Ds Resp. P MPSJ, SOF ¶ 1 (Doc. 244-1) at 2). Based on this last disclosure the Court asked for additional information to enable it to determine whether Berkshire has a controlling interest in Berkadia because the Court holds stock in

Berkshire. (Order (Doc. 262)).

As noted by Plaintiff: "Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). 28 U.S.C.A. § 455 (West) A judge "shall also disqualify [herself]" if the judge "knows that [she], individually or as a fiduciary, . . . , has a financial interest in the subject matter in controversy or in a party to the proceeding, <u>or any other interest that could be substantially affected by the outcome of the proceeding.</u>" 28 U.S.C. § 455(b)(4) (emphasis added to relevant part). "'[F]inancial interest" means ownership of a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4).

"No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b)," which includes disqualification based on a financial interest. "Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e).

February 2024, the Committee of Codes of Conduct issued Advisory Opinion 57 for Cannon 3(C)(1)(c) of the Code of Conduct for United States Judges, which tracks the rules set forth in 28 U.S.C. § 455.

Advisory Opinion 57 provides that "[i]f a parent corporation owns all or a majority of stock in a subsidiary that is a party, the Committee advises that a judge who owns stock in the parent then has a financial interest in the subsidiary, requiring recusal." The issue is less clear where the parent holds less than a majority interest—then, the owner of stock in a parent corporation has a financial interest in a subsidiary that the parent controls. "When a corporation does not own all or a majority of stock in a party, the judge should determine whether the corporation has control of the party, and a presumption of control arises with the 10% disclosure requirement in the Federal Rules. Fed. R. Civ. P. Rule 7.1. "Whether that presumption may be rebutted or not depends on other indicia of control, such as board representation or wide dispersion of the remainder of the stock, which are relevant to the

influence wielded by a 10% interest. . . .When a judge concludes that a party is controlled by a corporation in which the judge owns stock, the judge must recuse." (P Brief (Doc. 263) at 5-6 (quoting Advisory Opinion 57)).

Rule 7.1, Fed. R. Civ. P., requires parties to disclose any publicly held corporation owning 10% or more of its stock. Drawn from Rule 26.1 of the Fed. R. App. P., it functions "to assist judges in making a determination of whether they have any interests in any of a party's related corporate entities that would disqualify the judges from hearing the appeal." *Donoff v. Delta Air Lines, Inc*., No. 18-81258-CV, 2020 WL 3268500, at *2 (Fla. Feb. 4, 2020) (quoting Advisory Committee Notes to Rule 26.1). As previous explained to the parties, the Defendants' Response to Plaintiff's Motion for Partial Summary Judgment reflected the "more than 10 %" benchmark exists in this case and prompted the Court's inquiry into whether Berkshire has a controlling interest in Berkadia for the purpose of considering whether recusal is mandatory under 28 U.S.C. § 455(b)(4).

In response to the Court's inquiry, the Plaintiff explains that "Berkadia is a subsidiary of Berkshire. Berkshire, through other wholly-owned intermediate companies, ultimately owns 50% of Berkadia," (P Brief (Doc. 263) at 2), with the following ownership structure: 1) Berkshire owns BH Columbia Inc.; 2) BH Columbia Inc. owns Columbia Insurance Company; 3) Columbia Insurance Company owns 50% of Berkadia Commercial Mortgage Holding LLC; 4) the other 50% of Berkadia Commercial Mortgage Holding LLC is owned by LUK Servicing, which is owned by Jefferies US Holding LLC, which is in turn owned by Jefferies Financial Group Inc. *Id.* at 4-5.

 "Berkshire appoints two of [Berkadia's] Managers and Jefferies appoints the other two Managers. The Board of Managers confers authority on officers who control Berkadia's day-to-day business activities. As an <u>equally owned joint venture</u>, there is no mechanism for making decisions where Berkshire and Jefferies do not agree on a single course of action." *Id.* at 6.

Plaintiff did not provide information regarding Berkshire's overall portfolio but the Court's review of public documents reflects approximately 70 sub-companies, none of

which includes Berkadia. Berkshire Hathaway Inc., berkshirehathaway.com/subs/sublinks.html. Reportedly, the top stocks owned by Berkshire include Apple ($1.49.9 billion); Bank of America ($40.6 billion); American Express ($36.8 billion); Coca-Cola ($25.2 billion); Chevron ($20 billion) Occidental Petroleum ($15.7 billion); Kraft Heinz ($11.7 billion); Moody's ($ 10.2 billion); Mitsubishi ($7.8 billion), and Chubb ($7.1 billion). The Motley Fool, https://www.fool.com/investing/how-to-invest/famous-investors/warren-buffett-investments/stocks-owned/. It has a net worth of $885.45 billion as of June 6, 2024. Stock Analysis, https://stockanalysis.com/stocks/brk.b/market-cap/.

Plaintiff provided a copy of the Court's financial disclosures for January 1, 2021 through December 31, 2021, which reflect she has no interest in Berkshire. This is because the Court acquired stock in Berkshire on June 28, 2022. The purchase was made as part of a routine portfolio transaction and not requested by the Court. The Court made this and its full financial disclosures for 2022 in May 2023. The Berkshire stock makes up approximately 2 percent of the Court's financial investments. The key inquiry, however, is not the size of the Court's financial interest, but the size of the impact on that interest. (Advisory Opinion 69.) Berkshire is not a party to this proceeding, and the impact of this proceeding will be on Berkadia, not Berkshire. Given the vastness and diversity of Berkshire holdings, it would be an exceptional case that might impact it in its role as a parent corporation to a subsidiary, and this is not that case.

Based on the entirety of the record now before the Court, the Court concludes that it has no financial interest in the subject matter in controversy or in a party to the proceeding. It also has no other financial interest that could be substantially affected by the outcome of the proceeding. The oversight in discovering that Berkshire has more than 10% interest in Berkadia was unfortunate but not a basis mandating recusal. This is simply not the type of case, such as a large class action involving massive damages or a case involving one of Berkshire's major holdings, that would impact Berkshire or could substantially affect the Court's financial interest in Berkshire.

More importantly, this Court has immediately divested itself of all Berkshire stock,

effective June 6, 2024. Section 455(f) provides for circumstances where a judge "to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to [] her, that [] she . . . has a financial interest in a party" then "disqualification is not required if the [] judge, . . . divests [] herself of the interest that provides the grounds for the disqualification." "This option is limited to "the disposal of financial interests that will not be substantially affected by the outcome of the litigation" because then the likelihood of any appearance of impropriety related to the disposition of the disqualifying interest is remote. Advisory Opinion 69. Subsection f has been applied in circumstances similar to those faced by this Court. In *Kidder, Peabody & Company, Inc., v. Maxus Energy Corp.,* 925 F.2d 556, (2nd Cir. 1991), after entering declaratory judgment and other favorable rulings for Kidder, on appeal Maxus moved to vacate the declaratory judgment and argued that he was disqualified because it was discovered that the judge and his wife owned shares of General Electric (GE) stock, which held 80% of outstanding stock in party, Kidder, through a wholly owned subsidiary. Upon learning of the relationship between GE and Kidder, the judge and his wife had sold the GE stock. Applying § 455(f), the court found that the complete divestiture and disclosure upon learning of the interest belied any contention that judge knew of a financial interest but continued to preside over litigation..

In this case, there has been extensive judicial work, some of which was conducted before the Court's acquisition of Berkshire stock, expended to get discovery completed and to arrive at the stage in the case where dispositive motions have been filed and are ripe for disposition. "'A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 136, 140 (2d Cir. 2007) (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988). Judges must balance the duty to appear impartial against several practical considerations, including the availability of other judges, the cost in judicial resources of recusal and reassignment of the case to different judges, and the interest of the parties and the public in a swift resolution of the dispute. *Id.* (cleaned up). As explained, §

"455(f) is meant to help judges strike a balance between the duty to recuse when their impartiality might reasonably be questioned and the need to resolve cases expeditiously and without undue collateral litigation." *Id.* at 141. There is a clear public interest in continued participation by this Court in this litigation.

**Accordingly,**

**IT IS ORDERED** that after reviewing a potential recusal issue, the Court finds it has no reason to recuse under 28 U.S.C. § 455 (a) and (b) and will remain on the case.

Dated this 7th day of June, 2024.

_____
Honorable Cindy K. Jorgenson
United States District Judge